**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 7 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DONALD TRUJILLO,

      Defendant - Appellant.

No. 04-2004

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-02-2043-BB)**

Richard Winterbottom, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **SEYMOUR**, **PORFILIO** and **MURPHY**, Circuit Judges.

**PORFILIO**, Senior Circuit Judge.

Donald Trujillo appeals from a judgment after a jury trial upon a verdict of guilty of possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). The single question he poses is whether the court erred by conditioning granting his request for a lesser included instruction on simple possession with his abandoning what the court characterized as mutually exclusive defenses. Mr. Trujillo contends the condition amounts to the addition of a fifth element to this Circuit's four-part test to determine whether defendant is entitled to an instruction on a lesser included offense. We agree, reverse the conviction, and remand for a new trial.[1]

## I.

During an investigation of suspected drug activity at Buddy's Complete Automotive, an Albuquerque repair shop owned by Joe Lucero, DEA Special Agent Michael Mans received authorization to wiretap Lucero's telephone. On August 7, 2002, agents intercepted a call around 4:00 in the afternoon from an individual identified as "Donny" who was on his way from Bernalillo to Buddy's. After the call, DEA agents monitored the activity in the lot outside Buddy's, surveilling the scene with a camera mounted on a pole across the street. Of note was a red Camaro driven from the lot onto the street at 5:38 p.m. and returned later by two individuals, one carrying a box that looked like a 12-pack of beer. After the two went into Buddy's, another man came out and backed the Camaro up to the shop front so that the trunk faced the business. A little

---

[1]Because of this disposition, we do not address Mr. Trujillo's sentencing issue.

after 7:00, an individual carried something which he put in the trunk and then got into the driver's seat. On their monitor, the agents observed more conversation, individuals walking back and forth to the Camaro, and an individual opening the Camaro's trunk, apparently to rearrange the contents before driving away in the Camaro. DEA surveillance then alerted a New Mexico traffic patrolman to conduct a traffic stop on the red Camaro as it proceeded north on I-25.

New Mexico State Patrolman Larry Hall stopped the Camaro for going 72-mph in a 45-mph construction zone, and the driver, then identified as Mr. Trujillo, handed over his drivers's license, an expired auto registration in his brother Arthur Trujillo's name, and an expired proof of insurance. Having noticed Mr. Trujillo's intense stare and shaking hands as these documents were handed over, Officer Hall chatted, asking where Mr. Trujillo had come from. Mr. Trujillo "stuttered" Buddy's, as if he could not remember the name. Officer Hall issued only a warning citation for speeding and then asked whether Mr. Trujillo had any drugs in the Camaro. Mr. Trujillo responded, "Not that I know." Asked about weapons, Mr. Trujillo stated that on the passenger seat there was a loaded .357 Magnum, which belonged to his brother[2] Officer Hall then asked Mr. Trujillo if his dog, Tessa, could conduct a K-9 sniff of the vehicle. Mr. Trujillo signed

---

[2]The Camaro and firearm were registered to Mr. Trujillo's brother, Arthur Trujillo, who had died earlier that year.

- 3 -

the consent forms for a full search; backup assistance arrived; and the officer retrieved the firearm while Trujillo stood aside with the second patrolman.

When the trunk was opened, the dog alerted to a Valvoline box with a spoon coated with a white residue lying atop. Officer Hall opened the box. Inside were four baggies of a white powdery substance. That was the only box in the trunk along with some clothes and trash. Mr.Trujillo was arrested. Later, the powder tested positive for cocaine; the 112.7 grams was judged 79% pure. The residue on the spoon was baking soda.

In two counts of a 27-count indictment naming eight other defendants, Mr. Trujillo was charged with conspiracy to possess with intent to distribute five kilograms and more of cocaine and quantities of marijuana; and possession with intent to distribute less than 500 grams of cocaine. The government dismissed the conspiracy charge, and Mr. Trujillo, the only defendant to reject a plea offer, proceeded to jury trial.

In his opening statement, defense counsel told the jury, "[t]he evidence will show, in this case, that Mr. Trujillo did not know that there was cocaine in that car, number one. And the evidence will show, ladies and gentlemen, more importantly, that he had absolutely no intention of distributing that cocaine to anyone else."

The government offered four witnesses, Special Agent Mans, Officer Hall, New Mexico State Police Officer James Mowduk, a narcotics agent who had taken custody of the evidence, and Rajesh Patel, a DEA forensic chemist who testified about the quantity

and purity of the cocaine. The government introduced the videotape of the activity at Buddy's preceding the arrest.[3]

Defense counsel cross-examined Special Agent Mans about the number of dosage units in the approximately four ounces of cocaine seized. Agent Mans testified that the four ounces were the equivalent of approximately 448 dosage units, each about the size of a packet of Equal sweetener, with an Albuquerque street value of $2,000 to $2,400. Defense counsel's line of questioning focused on the variety of types of ingestion an individual might use to consume this quantity of cocaine to the end of establishing that the quantity could also likely indicate personal use.

At the close of the evidence, defense counsel requested the court instruct the jury on the lesser included offense of simple possession. The request was supported with the assertion the government's witness did not testify that the amount of cocaine seized was consistent with distribution and inconsistent with personal use; and the government did not introduce any other evidence indicating distribution, baggies, scales, or cash found on Mr. Trujillo. The government countered, relying on *United States v. Harris,* 313 F.3d 1228 (10th Cir. 2002), which affirmed the denial of a lesser included instruction on

---

[3]Special Agent Mans testified about the videotape, pointing out Mr. Trujillo, and describing the activity in the lot, a disjointed and blurred sequence of individuals moving about. With passing trucks and traffic often obscuring the view, the quality of the tape makes difficult full discernment of what the various individuals carried. Special Agent Mans acknowledged he could not see Mr. Trujillo place what he carried, "a small package," in the trunk because the trunk lid was up, blocking the view.

simple possession, in part, because of the quantity of cocaine base seized. With this authority, the government objected to the lesser included instruction solely based on quantity.

Troubled by the defendant's assertion, the court reviewed Agent Mans' testimony on his experience with a typical daily use of cocaine. The court remarked that the particular packaging of the cocaine in this case was not bundled in smaller quantities "ready to go for personal distribution." It also distinguished the relatively smaller street value, approximately $2,400, from cash seized in other cases.

After a recess in which the court reread *Harris*, it stated, "this is a close question, a difficult case. I suppose I could get just better guidance from the Tenth Circuit, by not including [the lesser included instruction] and let [defense counsel] appeal." The court resolved the question by acknowledging the standard was not whether the evidence of simple possession was weak, but "whether there is any evidence to support submission of the lesser included instruction." The court also relied on *United States v. Burns*, 624 F.2d 95 (10th Cir. 1980), and *United States v. Wright*, 131 F.3d 1111 (4th Cir. 1997).

The government pressed its position, insisting quantity was dispositive and citing *United States v. Moore*, 108 F.3d 270 (10th Cir. 1997). In its view, jurors could reasonably make inferences about personal use and drug purity, which are "often a matter of common knowledge to television viewers of police dramatizations. So this is something within the jury's province to infer." Moreover, the government continued, "In

his opening statement, Mr. Kennedy [Mr. Trujillo's counsel] said the evidence will show that Donald Trujillo had no knowledge of the cocaine in the car. Well, you can't intend to distribute something that you don't even know you have. So, if his defense is that, then he really can't . . ." The court interrupted, questioning defense counsel:

| Court: | It is true those are mutually exclusive. Mr. Kennedy, are you arguing that your client did not know the drugs were there? Your opening was fairly ambiguous, and I'm sure intentionally so. |
|---|---|
| Mr. Kennedy: | And I prefer to stand that way. |
| Court: | I don't think you can have it both ways. He can't say, I didn't know it was here, but if I did, I was going to use it for personal use. |
| Mr. Kennedy: | I'm arguing the strength of the government's case is such that the evidence in the light most favorable to the government is that Mr. Trujillo is a personal drug user. That's my argument to the jury. |
| Court: | You're not arguing he didn't know it was there? |
| Mr. Kennedy: | Well, I think there is evidence he didn't know it was there either. |
| Court: | I don't think you can have it both ways. There is a Seventh Circuit case I read, and of course I can't bring it out right now, that says you can't have it both ways. That's pretty much my understanding of the law. I'll give you the citation in a moment [*United States v. Hill*, 196 F.3d 806 (7th Cir. 1999)]. If that is your position, then, I won't give the lesser included. |
| Mr. Kennedy: | I think my position to the jury in closing argument will be that it was for personal use. |

Court: *All right. If you're not going to argue that he didn't know he had it, then I will give the lesser included.*

(emphasis added). However, defense counsel did not object at that juncture to the court's conditioning its giving the lesser included instruction upon his giving up a theory of defense to the lesser charge. Nonetheless, because Mr. Trujillo challenged the government's *proof* of both *knowing* possession and intent to distribute, he now maintains the court, in effect, added a **fifth** requirement to the test a defendant must satisfy to be entitled to a lesser included offense instruction: defendant must abandon any inconsistent defense premised on the lesser included instruction.

## II. Discussion

Although the government asserts our review is predicated on plain error, defense counsel's having failed to object to the court's ruling, Mr. Trujillo disagrees, focusing review instead on the precise issue created by the district court. That issue is whether his entitlement to the lesser included instruction requires he make a Hobson's choice: give up his assertion the government failed to prove simple possession and possession with intent to distribute which both of his defenses targeted from opening statement to the moment of the choice or give up the right to the lesser included instruction which the court had otherwise ruled fully satisfied the four requirements for such an instruction.[4] Under that

---

[4]*Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir. 1983), and its progeny require:
    1. A proper request.

(continued...)

view, because the error was produced by the court itself, plain error review is inappropriate, he asserts. Instead, the standard of review he advances is de novo, requiring inquiry solely into whether the offense satisfied the four-part test for a lesser included instruction.

Although we recognize plain error review under Fed. R. Crim. P. 52(b) is "permissive, not mandatory," **United States v. Olano**, 507 U.S. 725, 736 (1993), under the unique circumstances of this case, we believe the particular posture of the court's ruling masked the impetus or opportunity for defense counsel to object.[5] After all, the court had just granted defense counsel's request to put his theory of the government's case before the jury. In the momentum of that ruling, the court bundled its inchoate decision denying a trial defense.[6] From that perspective, the issue properly is whether the

---

[4](...continued)
>2. The lesser included offense consists of some, but not all, of the elements of the offense charged;
>3. The element differentiating the two offenses is a matter in dispute; and
>4. A jury could rationally convict the defendant of the lesser offense and acquit of the greater offense.

That is, "(1) the elements of the lesser offense must be a subset of the elements of the charged offense; and (2) the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." **United States v. Harrison**, 55 F.3d 163, 166 (10th Cir. 1995), *quoting* **United States v. Browner**, 889 F.2d 549, 550-51 (5th Cir. 1989) (citations omitted).

[5]Further, we reject Mr. Trujillo's opaque assertion plain error review is not available for errors created by the district court itself.

[6]This said, we do not speculate on trial strategy or other motives the government
(continued...)

court correctly included the condition that defendant could not argue he did not know the cocaine was in the trunk of the Camaro to be entitled to the lesser included instruction.

Resolution of this question is two-fold. First, we must consider whether the court properly granted the lesser included instruction. Second, we must decide whether under these circumstances, defendant may not raise inconsistent defenses.

First, under our precedent and that relied upon by the court, Mr. Trujillo satisfied the four-part test after the court properly "focused narrowly on whether there is any evidence fairly tending to bear on the lesser included offense." *Harris*, 313 F.3d at 1249, *quoting United States v. Humphrey,* 208 F.3d 1190, 1206 (10th Cir. 2000) (*citing United States v. Duran*, 127 F.3d 911, 914 (10th Cir. 1997). Indeed, the district court distinguished the "close question" the evidence presented here in contrast to precedent affirming the denial of a lesser included instruction of simple possession.

For example, in *Harris*, the court looked at the evidence to decide whether the jury could rationally acquit defendant of the lesser charge of simple possession. There, defendant **told** DEA officers he was traveling from Los Angeles to Mobile, Alabama, **to sell** the crack cocaine hidden in his boot. Officers then seized the four ounces of cocaine base, approximately 472 rocks of crack cocaine from defendant's boot after he was

---

[6](...continued)
attributes to the interchange. Further, under the circumstances of the case, we do not accept the government's characterization of the issue as a limitation on closing argument which is reviewed for an abuse of discretion. *See United States v. Baker*, 638 F.2d 198, 203 (10th Cir. 1980).

apprehended. 313 F.3d at 1241. The court also noted the total street value of the crack seized, approximately $9,500, based on each $20 rock. *Id*. Given the statement defendant intended to sell the crack cocaine, we agreed that no rational jury could have acquitted on the lesser charge of simple possession and affirmed the court's denial of the request.

Similarly, in ***United States v. Moore,*** 108 F.2d at 270, we held defendant failed to satisfy the four-part test based on the evidence defendant was observed inside a crack house making hand-to-hand exchanges with buyers; most of the money found after a search was in defendant's pockets; defendant left the house as officers approached to execute the search warrant and was seen throwing an object, later discovered to be a baggy of cocaine rocks; and defendant stated he knew about the drug activity at the house. *Id.* at 273. Given the trial defense that defendant was "simply not involved in any drug activity at the house," *id.* at 274, the lesser included instruction was propped on the "disputed fact" that defendant "either committed the crimes alleged or did nothing at all." *Id*. Hence, we affirmed the court's ruling the evidence did not warrant a simple possession charge. *Id. See also*, ***United States v. Fitzgerald***, 719 F.2d 1069, 1072 (10th Cir. 1983) (affirming denial of lesser included instruction on simple possession when evidence of possession with intent to distribute included $18,000 worth of drugs,

sensitive scales in defendant's hotel room, and a substantial amount of traffic to the room).[7]

In contrast, here, despite the government's insistence that the quantity alone was sufficient to permit only one rational inference by the jury, the court's misgivings correctly and sufficiently supported its decision to give the instruction on simple possession. To then condition that decision on removing from the jury's deliberation a rational inference from "any" evidence supporting the lesser charge that Mr. Trujillo did not know the cocaine was in the trunk undercut the decision.

This conclusion gives rise to the second question before us: whether the court properly qualified that decision to give the lesser included instruction on Mr. Trujillo's giving up what it deemed to be an inconsistent defense. "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). "Even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* at 62. We have embraced the proposition in reiterating that a criminal defendant "is entitled to instructions on *any* defense, including inconsistent

---

[7]In contrast, in *United States v. Burns*, 624 F.2d 95, 104 (10th Cir. 1980), we reversed the denial of the lesser included instruction, noting that although defendants were arrested "in possession of cocaine," but before distribution, the evidence supported possession with intent to distribute was such that "the jury was free also not to draw such inference." *Id.*

- 12 -

ones, that find support in the evidence and the law and '[f]ailure to so instruct is reversible error.'" *United States v. Abeyta*, 27 F.3d 470, 475 (10th Cir. 1994) (citations omitted).

Although *Mathews* involved an entrapment defense, we have not limited its holding solely to cases involving entrapment.[8] Indeed, in *Abeyta*, the trial court perceived a "claim of self defense preclude[d] defendant from arguing that he was too drunk to act with specific intent. If he acted intentionally to defend himself, we are told, it just 'doesn't fit' to think him too drunk to appreciate the import of his actions." 27 F.3d at 475. We observed that argument overlooked the fact defendant is entitled to instructions on "*any* defense, including inconsistent ones," with evidentiary support. *Id.*[9]

Similarly, in a Second Circuit case, defendant, worried about criminal activity in his neighborhood, threw a brick at an unmarked car suspiciously parked outside his home.

---

[8]Nor have other Circuits. The Second and Fifth Circuits, for example, have stated that nothing in *Mathews* limits that holding to entrapment alone. *United States v. Goldson*, 954 F.2d 51, 55 (2d Cir. 1992); *see also*, *United States v. Browner*, 889 F.2d 549, 555 (5th Cir. 1989) (holding that defendant was entitled to a jury instruction that she did not intend to stab her husband, and, alternatively, she stabbed him in self defense); *Arcoren v. United States*, 929 F.2d 1235, 1245 (8th Cir. 1991) (holding that defendant was entitled to a jury instruction he reasonably believed the victim was at least sixteen years old, and, in the alternative, he did not have sexual contact with her).

[9]We distinguish that in *Abeyta*, Justice White, sitting with the panel, determined the error reflected the "court's findings . . . went over the line. In holding that appellant 'certainly' acted with the specific design of doing [the victim] bodily harm 'which was not bothered by any alcohol,' the trial court must have viewed the evidence as insufficient to support a verdict of guilt on the lesser New Mexico offense. In doing so the trial court took from the jury and decided for itself a hotly contested question, one on which rational jurors certainly could have disagreed." 27 F.3d at 475.

***United States v. Goldson***, 954 F.2d 51, 52 (2d Cir. 1992).  Unknown to him, the car was involved in a DEA surveillance operation at a house in the vicinity.  Charged with assaulting a federal officer in violation of 18 U.S.C. § 111, Goldson clearly requested to have the jury instructed that, "even if they found that he threw the brick at [the DEA] car, they should acquit him if they found that he reasonably believed at the time of the confrontation that 'agent McGurk was a civilian who intended him harm.'"  ***Id.*** at 53-54.  The district court denied Goldson's request on the ground there was no factual basis for this theory of self-defense.  The district court observed:

> [T]he defendant says here I didn't throw the brick.  There is no illegal act on my part, not that I did throw the brick, but I did it because I thought the man was a thief or a burglar and I wanted to chases [sic] him away from my wife and family.
>
> . . . .
>
> [O]f course there is no foundation here for a defense of self defense or I threw it mistakenly, that's not so here.  There is not a shred of evidence as to that.  He did or didn't do it.  He says and so swore that he didn't do it.  The issue is clear and sharp.

***Id.***  Although the district court found "not a shred of evidence" that Goldson threw the brick in the mistaken belief that the DEA agent was a private citizen who threatened him and rejected the evidence in support of his alternative defense because Goldson testified he did not throw the brick, the Second Circuit held the court erred, however, because Goldson "should be permitted to present wholly inconsistent defenses."  ***Id.*** at 55-56.  It,

- 14 -

thus, held there was sufficient evidence to support the proposed jury instruction and error in refusing to give it. *Id.* at 56.

Similarly, preventing Mr. Trujillo from arguing the inconsistent defense supported by the evidence and the law that he did not know the cocaine was in the trunk, albeit permitting an instruction on simple possession, was error. Although the court believed the decision was supported by *United States v. Hill*, 196 F.3d 806 (7th Cir. 1999), we cannot agree.

In *Hill*, the court refused to give the lesser included instruction on simple possession. It noted that while the evidence of 20 grams of crack cocaine "was not so large as to compel an inference that he was a dealer, there was much other evidence of that, including the way the crack was packaged (it was in 73 separate bags as well), and the large amount of cash that Hill had in his possession when he was arrested, even though he had been lawfully employed for only a week." *Id.* at 807. Hill denied possessing any crack at all. *Id.* Rejecting the exculpatory theory, the court reasoned, "[n]o rational jury could have found him guilty of simple possession on this record. If it believed him, it had to acquit him of any drug offense; if it disbelieved him, it had to convict him of possession with intent to distribute." *Id.*

Such is not the case here. Because the government's proof of intent to distribute was based solely on quantity, an evidentiary basis the district deemed close, the district court properly instructed the jury on simple possession. To qualify that instruction on Mr.

Trujillo's giving up the defense the government had failed to prove he knew the drugs were in the car based on *any* record evidence is, thus, error.

Nonetheless, we must consider whether the error was harmless.[10]  ***United States v. Howell***, 285 F.3d 1263, 1270 (10th Cir. 2002).  Under ***Kotteakos v. United States***, 328 U.S. 750 (1946), a non-constitutional error is harmless unless "'the error . . . had substantial influence' on the outcome of the trial 'or if one is left in grave doubt' as to its influence." ***Howell***, 285 F.3d at 1270, *quoting **Kotteakos***, 328 U.S. at 765.  Because the evidence supporting the conviction of possession with intent to distribute was not overwhelming, we cannot say with certitude under the circumstances that but for the elimination of the defense, Mr. Trujillo would have been convicted of the greater offense. The error, therefore, is not harmless.  We, thus, **REVERSE** the conviction and sentence and **REMAND** for a new trial.

---

[10]Mr. Trujillo has not alleged constitutional error.