The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Ezamika BROWN, Defendant–Appellant.

No. 07CA0209.

Colorado Court of Appeals, Div. VII.

June 25, 2009.

John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Rebecca R. Freyre, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Ezamika Brown, was convicted after a jury trial of attempted first degree murder and sentenced to forty-eight years in the custody of the Department of Corrections. His most significant appellate

issue involves whether a defendant denying involvement in an offense may also seek lesser included offense instructions. We hold: (1) a claim of innocence does not disentitle a defendant to a lesser included offense instruction; but (2) it was not error on these facts to deny lesser included offense or voluntary intoxication instructions. We reject other claims of error and affirm.

## I.  Background

Defendant and the victim were in a relationship. One Saturday evening, after both took Ecstasy, they went to a pool hall where they had drinks. They argued, and defendant admitted having cheated on the victim in her car and apartment. The victim demanded defendant return her car and apartment keys; he handed them over, saying it would be the last time he did so.

Early the next morning, the victim was awakened by the sound of her sliding door. Fearing immediately it was defendant entering, she went to get a phone. Defendant emerged, grabbed and smashed the phone, and threw it outside. After defendant ripped a purse from her hands, the victim went to her bedroom.

Defendant went to the victim's bedroom, held a gun to the side of her head, and fired a deafening shot past her. At close range, defendant then fired three shots into her body before fleeing. Unable to summon neighbors, the victim dragged herself outside the apartment where residents discovered her; she told them and a responding police officer that her boyfriend had shot her.

That same morning, a couple of hours after the shooting, defendant bought a one-way ticket on a bus headed to the east coast. He left later that day with only the clothes on his back. At the request of Colorado authorities, he was arrested when the bus reached Iowa.

The victim survived only after spending eight days on a ventilator in a hospital's intensive care unit and another two weeks in the hospital's multi-trauma unit and rehabilitation facility. A treating physician described the serious bodily injuries to the victim and the surgery to remove her spleen.

Asked how badly the victim was injured, the physician responded that on a scale of 1 to 10, "10 being dead ... [s]he was about an 8–1/2."

The defense denied defendant had any involvement in the shooting, arguing the victim had been robbed and shot by defendant's associates looking for drugs. Defendant testified in his own defense. He claimed he checked into a motel using an alias on the night before the shooting, drank an unopened bottle of vodka to the point of getting sick, and fell asleep until around 9:00 a.m. (after the shooting), when he decided to go to the bus station to buy a one-way ticket out of town.

## II.  Lesser Offense and Intoxication Instructions

### A.  Background and Standard of Review

Defense counsel requested that the court instruct the jury on lesser included offenses such as attempted second degree murder. The court denied the request, referring to case law that a defendant who testifies and denies any involvement in the crime is not entitled to lesser included offense instructions. The court likewise denied defense counsel's request for a voluntary intoxication instruction.

■ The denial of a lesser included offense instruction can raise pure issues of law or mixed questions of law and fact. *Compare Meads v. People,* 78 P.3d 290, 293–96 (Colo. 2003) (independently deciding whether one statutory offense is included within another), *with People v. Jimenez,* 217 P.3d 841, 870 (Colo.App.2008) (whether evidence supports lesser included offense instruction is reviewed for an abuse of discretion). Here, the court's denial was predicated on its legal determination that a defendant who testifies to his complete innocence cannot seek a lesser included offense instruction. We will review that determination de novo and, if it is incorrect, review the record independently to decide whether defendant was entitled to the requested instructions. *See People v. Rubio,* —— P.3d ——, ——, 2009 WL 1013037, at *4 (Colo.App. No. 06CA2014, Apr. 16, 2009).

## B. Analysis

A defendant is entitled to a lesser included offense instruction if there is "a rational basis in the evidence to support a verdict acquitting him of a greater offense . . . and convicting him of the lesser offense." *People v. Bartowsheski*, 661 P.2d 235, 242 (Colo.1983); *see* § 18–1–408(6), C.R.S.2008 (instruction not required absent "a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense"). The evidentiary burden is not heavy: "a defendant is entitled to an instruction on a lesser included offense if there is any evidence, however slight, to establish the lesser included offense." *Jones v. People*, 711 P.2d 1270, 1278 (Colo.1986). But "[w]here the evidence is such that the defendant must either be guilty of the greater offense or not guilty of any criminal conduct at all, an instruction on a lesser included offense is inappropriate." *Apodaca v. People*, 712 P.2d 467, 474 (Colo.1985).

We must decide whether these same standards apply where a defendant testifies that he had nothing to do with the crime. Does such testimony automatically disentitle defendant from instructions on lesser included offenses and voluntary intoxication?

1. A defendant claiming complete innocence of a greater offense is not automatically disentitled from lesser included offense instructions.

Defendant's entitlement to a lesser included offense instruction depends entirely on Colorado statutes, rules, and case law. While the Constitution sometimes compels lesser included offense instructions in capital cases, *see Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), that constitutional entitlement does not extend to noncapital cases. *See Rubio*, —— P.3d at ——, 2009 WL 1013037, at *6 (citing *United States v. Eddy*, 523 F.3d 1268, 1270 (10th Cir.2008); *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir.2004)).

We begin, therefore, with the rule and statutory provisions governing lesser included offenses. The rule provides, without limitation, that a "defendant may be found guilty of an offense necessarily included in the offense charged." Crim. P. 31(c). The statute is similar and details when one offense is included within another. § 18–1–408(5), C.R.S. 1008. The only statutory bar is that "[t]he court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 18–1–408(6).

There accordingly is nothing in the statute or rule disentitling a defendant who testifies that he was completely innocent of a crime from instructions on lesser included offenses otherwise supported by the law and facts. We turn, therefore, to the case law.

There is no controlling Colorado Supreme Court case on point. In *People v. Garcia*, 826 P.2d 1259 (Colo.1992), a defendant convicted of murder challenged denial of an instruction on what then was a lesser *non*-included manslaughter offense. The defendant had testified: (1) an intruder had killed the victim; and (2) the only evidence (the defendant's own confession) suggesting the defendant had acted in the heat of passion when he killed the victim was "a lie." *Id.* at 1261–62.

*Garcia* used two rationales to hold the defendant could not "claim that an intruder stabbed [the victim] and at the same time obtain an instruction based on the theory that he stabbed [the victim] in the heat of passion." *Id.* at 1262–64. The first was that under the "judicial admission" doctrine, the defendant could not seek an instruction based on evidence that he testified was "a lie." *Id.* at 1262–63. That rationale cannot support a rule denying lesser offense instructions to all defendants claiming complete innocence because such claims of innocence do not necessarily "admit" anything about an actual perpetrator's actions or state of mind.

The second rationale in *Garcia* is arguably more supportive of an absolute disentitlement rule. The court followed Oklahoma case law that a "defendant [who] testified that he did not kill the victim and asserted that another person was responsible" had " 'render[ed] every theory of defense unavailable save one, [and] will be deemed to have

elected that one.'" *Id.* at 1263 (quoting *Spuehler v. State,* 709 P.2d 202, 204 (Okla. Crim.App.1985)).

We conclude this "deemed election" rationale is not controlling in the lesser included offense context. The key distinction between this case and *Garcia* is that *Garcia* involved a lesser *non*-included offense. *Id.* at 1262; *see Walker v. People,* 932 P.2d 303, 307–08 (Colo.1997). The non-included offense doctrine is a judicial construct created by analogy to a "defense theory of the case" instruction. *People v. Rivera,* 186 Colo. 24, 28–29, 525 P.2d 431, 434 (1974). Courts are free to limit judicially created doctrines with other judicial doctrines. That same freedom does not exist as to the statutory and rule-based lesser included offense doctrine.

*Garcia* simply held a defendant is not entitled to a theory of defense instruction inconsistent with his own principal theory. We decline to extend it to lesser included offenses. *See People v. Castro,* 10 P.3d 700, 702–03 (Colo.App.2000) (distinguishing Garcia in rejecting prosecution's argument that it precluded lesser included offense instruction); *but see People v. Chavez,* 190 P.3d 760, 769–70 (Colo.App.2007) (citing non-included offense case of *People v. Bustos,* 725 P.2d 1174, 1175–76 (Colo.App.1986), in finding no entitlement to lesser included offense instruction that was "inconsistent with the defendant's theory of defense").

The Tenth Circuit in capital cases has held that a "court cannot deny a defendant's request for a lesser included offense jury instruction on the basis that the defendant claims he is innocent." *Hooker v. Mullin,* 293 F.3d 1232, 1238–39 (10th Cir.2002) (following *Mitchell v. Gibson,* 262 F.3d 1036, 1050–51 (10th Cir.2001)). These cases expressly reject the Oklahoma courts' rationale that where "'a defendant's testimony excludes all but one theory of defense, he is deemed to have elected that theory.'" *Mitchell,* 262 F.3d at 1049–50 (quoting and rejecting Oklahoma reasoning).

Similarly, in non-capital federal cases, the Tenth Circuit has held that a defendant claiming complete innocence of a greater offense may still be entitled to a lesser included offense instruction. In *United States v.*

*Trujillo,* 390 F.3d 1267 (10th Cir.2004), the district court ruled a defendant charged with possession with intent to distribute drugs could not "have it both ways" by denying having possessed cocaine but then saying "if I did, I was going to use it for personal use." *Id.* at 1271. The Tenth Circuit held this was error, because defendants may raise inconsistent defenses and their right to a lesser included offense instruction cannot require forgoing a claim of complete innocence. *Id.* at 1272–74.

Other federal courts likewise have held that the fact that a lesser included offense "instruction was inconsistent with [the defendant's] testimony was not a correct reason for the [trial] court to have refused to give the instruction." *United States v. Goldson,* 954 F.2d 51, 55–56 (2d Cir.1992). The Fifth Circuit has held a defendant entitled to instructions on any "lesser included offense whenever there is evidence sufficient for a reasonable jury to find in her favor, even when the defense and lesser included offense are inconsistent with each other." *United States v. Browner,* 889 F.2d 549, 555 (5th Cir.1989).

These cases rely on *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), which held that a defendant claiming complete innocence may also raise an inconsistent defense of entrapment. *Mathews* applied the "general proposition [that] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," noting a "parallel rule has been applied in the context of a lesser included offense instruction." *Id.* at 63, 108 S.Ct. 883. It rejected the government's argument that inconsistent defenses should be precluded to prevent perjury. *Id.* at 65–66, 108 S.Ct. 883.

Federal courts are nonetheless divided on the issue before us. The Fifth Circuit, in reaffirming that "a defendant who protests his complete innocence may receive a lesser included offense instruction," has noted the divide. *Reed v. Quarterman,* 504 F.3d 465, 491 & n. 10 (5th Cir.2007) (citing Tenth Cir-

cuit cases consistent with its view and Eighth Circuit cases to the contrary).

The contrary view was stated most succinctly in *United States v. Hill,* 196 F.3d 806 (7th Cir.1999). Judge Posner wrote:

> [W]e hold that a defendant who, as in this case, presents an exculpatory defense (that he didn't possess the crack, let alone with intent to distribute it) is not entitled to a lesser-included instruction. [Citing cases from D.C., Eighth, Ninth, and Eleventh Circuits.] For then the only basis for conviction of the lesser included offense would be the jury's finding that he was lying in denying his guilt of that offense. Such a rule would encourage perjury.

*Id.* at 808–09.

This reasoning seems irreconcilable with the Supreme Court's opinion in *Mathews,* which *Hill* inexplicably did not cite. A defendant need not inevitably commit perjury by denying involvement in the greater offense yet seeking a lesser included offense instruction. For example, a defendant charged with attempted first degree murder could deny any involvement in a shooting yet argue through counsel that the shooter (whoever he was) acted without premeditation or intent to cause death. In any event, where a defendant does testify inconsistently, he not only will "expose himself to prosecution for perjury" but also will likely "destroy his credibility" in front of the jury. *Mathews,* 485 U.S. at 65–66, 108 S.Ct. 883 (internal quotations and punctuation omitted).

We recognize *Mathews* is not binding on us, as it involved an issue of federal criminal law not rooted in the Constitution. Indeed, other divisions of this court have declined to follow *Mathews* with respect to the affirmative defense of entrapment. *See People v. Hendrickson,* 45 P.3d 786, 791–92 (Colo.App. 2001), *followed by People v. Grizzle,* 140 P.3d 224, 225–26 (Colo.App.2006). Those decisions do so as a matter of statutory construction, holding that Colorado's entrapment statute "presupposes the commission of acts that would constitute an offense" and therefore that "a defendant must admit having engaged in the proscribed conduct to be entitled to an entrapment instruction." *Hendrickson,* 45 P.3d at 792 (construing § 18–1–

709, C.R.S.2008). The lesser included offense statute and rule, in contrast, make no such presupposition and require no such admission.

We ultimately need not decide the policy arguments for or against an automatic disentitlement rule because this is not an instance in which courts must fill a legislative breach. *Cf. Mathews,* 485 U.S. at 66, 108 S.Ct. 883 (where limits on entrapment defense were "left to the courts" because "Congress ... has never spoken on the subject"). The Colorado legislature specifically has addressed the limits upon a lesser included offense instruction. It is not for us to create additional limits based on our own notions of policy.

Of course, a defendant who denies involvement in a greater offense may have more difficulty satisfying the normal requirement that there be "evidence to support a [rational] verdict acquitting him of a greater offense ... and convicting him of the lesser offense." *Bartowsheski,* 661 P.2d at 242; *cf. Chavez,* 190 P.3d at 763, 769–70 (defendant in whose apartment two scales, plastic baggies, and relatively large quantities of cocaine and marijuana were found not entitled to instruction on lesser included offense of simple possession where he denied possessing any drugs). Denial of a lesser included offense instruction in such a case, however, should be the result of applying the normal rules rather than erecting an absolute barrier.

> 2. Defendant was not entitled to the instructions because they were not supported by the trial evidence.

a. Lesser Included Attempt Instructions

■ Defendant argues that the jury should have been instructed on offenses less serious than attempted first degree murder because it rationally could have found the shooter acted without premeditation or the intent to cause death. We disagree there was any basis on this record for finding a less serious offense.

The circumstances of the shooting and the nature of the victim's injuries were such that no rational jury could find the shooter acted with anything other than a premeditated in-

tent to cause death. Defendant broke into the victim's apartment several hours after an argument and deliberately fired four shots at close range using hollow point bullets. He left the victim bleeding at death's door as he fled over the balcony, and there was indisputable evidence that only medical intervention prevented a fatality.

Defendant argues the jury properly could have found he did not intend to cause death because he initially pointed the gun at the victim's head but moved it away before firing the first shot, none of the shots hit the victim's head, and he stopped shooting even though more rounds were available. These facts in no way undercut the indisputable evidence that the shooter used and intended to use deadly force. There was not even slight evidence that defendant acted without premeditation or the intent to kill the victim. Because a jury could not rationally have convicted defendant of anything less than attempted first degree murder, defendant was not entitled to instructions on any less serious crimes.

b. Voluntary Intoxication

■ Defendant also argues he was entitled to an instruction on voluntary intoxication. Voluntary intoxication may negate the specific intent—intent to cause death formed "after deliberation"—required for first degree murder. *See People v. Miller,* 113 P.3d 743, 750 (Colo.2005); *People v. Harlan,* 8 P.3d 448, 474 (2000). And attempt crimes require the same culpable mental state required for completed offenses. *See* § 18–2–101(1), C.R.S. 2008. Accordingly, if supported by the evidence, a court upon request should instruct the jury that a defendant's voluntary intoxication may preclude the requisite intent for attempted first degree murder.

There is no controlling law on whether a defendant who denies committing the crime can still be entitled to a voluntary intoxication instruction. The supreme court has stated that "[w]here the evidence supports an intoxication defense, it is appropriate for a trial court to instruct on that defense." *People v. Mattas,* 645 P.2d 254, 259 (Colo.1982). In *People v. Villarreal,* 131 P.3d 1119, 1125–26 (Colo.App.2005), the division held it was

not *plain error* to fail to instruct on intoxication where it was inconsistent with the defendant's theory of defense that he was not the attacker.

■ We hold that, like a lesser included offense instruction, a voluntary intoxication instruction is not precluded by a defendant's testimony denying involvement in the offense. But, as with a lesser included offense instruction, a defendant's inconsistent testimony may result in lack of an evidentiary basis for such an instruction.

■ No intoxication instruction was required here because there was no evidence defendant committed the crime while intoxicated. Apart from defendant's own testimony, which we discuss below, the evidence showed only that defendant had taken an Ecstasy pill some twelve hours before the shooting and had drinks a few hours later. There was no evidence he was intoxicated the next morning.

Defendant relies on his own testimony to suggest he was intoxicated on the morning of the shooting. According to defendant, after leaving the victim the night before the shooting, he was drunk when he checked into a motel around 1:00 a.m. and then proceeded to drink a previously unopened bottle of vodka before getting sick and passing out until 9:00 a.m.

Defendant's testimony about his drunkenness cannot support an intoxication instruction because it would have made it physically impossible for him to have been the shooter. While inconsistent theories do not create an automatic instructional bar, a court is not required to instruct on intoxication if the only evidence supporting it necessarily would have precluded defendant from committing the offense. *Cf. Reed v. Quarterman,* 504 F.3d at 491 n. 10 ("[a]lthough an inconsistent trial theory may indicate a lack of evidence for a [lesser included offense] instruction, it does not definitively establish that fact") (internal punctuation omitted).

### III. Remaining Issues
A. Alleged Prosecutorial Misconduct

■ Defendant argues the trial court should have granted a mistrial based on an

alleged pattern of prosecutorial misconduct during the presentation of evidence and in closing arguments. Trial courts have broad discretion in deciding whether evidentiary presentations or closing arguments are improper and, if so, whether some remedy short of a mistrial can cure any prejudice. *See Bloom v. People,* 185 P.3d 797, 807–08 (Colo.2008); *Domingo–Gomez v. People,* 125 P.3d 1043, 1049 (Colo.2005).

The alleged misconduct included a police detective too eager to volunteer information on how hollow point bullets enter human bodies (a matter ruled beyond his expertise) and to offer his own irrelevant opinions on the victim's credibility. Defendant also contends the prosecutor's cross-examination of him was conducted in an improper manner laced with evidentiary mischaracterizations and unfounded questions. We agree with defendant that the police detective improperly tried to volunteer inadmissible evidence and the prosecutor asked several improper questions. But the trial court appropriately sustained objections, warned the witness and prosecutor, and gave limiting instructions. This "questionable and occasionally improper" conduct in presenting evidence was not "so prejudicial or pervasive as to deprive defendant of a fair trial." *People v. Hogan,* 114 P.3d 42, 56 (Colo.App.2004).

Defendant similarly contends the prosecutor's closing arguments contained unsupported speculation and improperly denigrated defense arguments as "red herrings" meant to "distract" jurors from "the real issues." The trial court overruled most objections but did sustain an objection to the argument about defense counsel trying to distract jurors from the real issues. It was not an abuse of discretion to conclude that most arguments involved inferences that fairly could be drawn from the trial evidence. To the extent the prosecutor engaged in rhetorical excess, the trial court sustained an objection. Any error in not specifically instructing jurors to disregard that argument was harmless in light of the overwhelming evidence of defendant's guilt. *See generally Crider v. People,* 186 P.3d 39, 42–44 (Colo.2008).

**B.   Denial of Constitutional Right of Confrontation**

■■  Defendant argues the trial court precluded cross-examination of the victim and thereby violated his constitutional right to confront her. The victim acknowledged suffering from postpartum depression and being on medication at the time of the shooting, but the court sustained a relevancy objection to asking what specifically had caused her to get to the point she needed medication.

Defense counsel did not assert in the trial court that this ruling violated any constitutional right. We therefore apply the plain error standard to review the Confrontation Clause claim. *See People v. Espinoza,* 195 P.3d 1122, 1125 (Colo.App.2008) (citing *People v. Vigil,* 127 P.3d 916, 929–30 (Colo. 2006)).

■■■  We conclude the trial court's evidentiary ruling was a proper exercise of discretion that was fully consistent with defendant's constitutional rights. Trial "judges have wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination because of concerns about harassment, prejudice, repetition, or marginal relevance." *Kinney v. People,* 187 P.3d 548, 559 (Colo.2008). Constitutional error requires a showing that the trial court "limit[ed] excessively" proper cross-examination into a relevant area. *Merritt v. People,* 842 P.2d 162, 167 (Colo.1992).

The postpartum issue was irrelevant and tangential to the jury's evaluation of the victim's credibility. Defendant's principal line of attack was that the victim had implicated him falsely, and his counsel was allowed broad cross-examination. There was no error, constitutional or otherwise, in precluding questioning on the victim's reasons for seeking postpartum treatment.

**C.   Right to Representative Jury**

■■  Defendant contends the trial court erred by not allowing further inquiry into his trial counsel's articulated "concerns" about the "randomness" of the jury panel. We review de novo whether a defendant established a prima facie violation of a consti-

tutional right to a jury drawn from a representative cross-section of the community. *Washington v. People*, 186 P.3d 594, 600 (Colo.2008).

Defendant produced no evidence that would even suggest a fair cross-selection violation. He did not show any distinctive group was underrepresented in the venire, much less that such underrepresentation resulted from systematic exclusion of the group. *See id.* Defendant claims the Jury Commissioner should have been required to come into court to address his "concerns." Defendant made no record, however, that would require further inquiry under either the Constitution or the Colorado Uniform Jury Selection and Service Act. *See* § 13–71–139(1) & (2), C.R.S.2008 (requiring written motion and affidavit "specifying the supporting facts and demographic data," as "the exclusive means by which a party may challenge a jury on the ground that the juror pool was not selected in conformity with this article").

### IV. Conclusion

The judgment is affirmed.

Judge RUSSEL, concurs.

Judge J. JONES, specially concurs.

Judge J. JONES, specially concurring.

I concur in the result reached by the majority.. I specifically concur in all parts of the majority opinion except part II.B.1. I write separately because it is not necessary for us to address the issue discussed in part II.B.1—whether defendant's reliance on a defense that he was not at all involved in the incident giving rise to the charges automatically disentitled him to instructions on lesser included offenses and voluntary intoxication—since it is clear that defendant was not entitled to such instructions on the state of the evidentiary record, as explained in part II.B.2. Given the lack of any need to address that issue, as well as the difficulty of the issue; the uncertainty (in my view) of the appropriate resolution; the existence of authority from our appellate courts arguably conflicting with the majority's holding, *e.g., People v. Garcia*, 826 P.2d 1259, 1262–64

(Colo.1992); *People v. Chavez*, 190 P.3d 760, 769–70 (Colo.App.2007); *People v. Villarreal*, 131 P.3d 1119, 1125 (Colo.App.2005); and the fact the parties' briefs do not address any authority from other jurisdictions (discussed at length by the majority), I do not think that this is a proper case to resolve it.