The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Serena HENDRICKSON, Defendant–
Appellant.

No. 00CA1024.

Colorado Court of Appeals,
Div. II.

Dec. 6, 2001.

Certiorari Denied April 22, 2002. *

---

* Justice BENDER and Justice COATS would grant as to the following issue:

Whether a defendant should be entitled to have the jury instructed on the affirmative defense of entrapment when she admits all of the physical acts but denied the mental element of the offense.

Ken Salazar, Attorney General, John D. Seidel, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Springer and Steinberg, P.C., Harvey A. Steinberg, Stacey L. Ross, Denver, CO, for Defendant–Appellant.

Opinion by JUDGE MARQUEZ.

Defendant, Serena Hendrickson, appeals a judgment of conviction entered on a jury verdict finding her guilty of one count of solicitation to commit first degree murder. We affirm.

In 1996, defendant's husband pled guilty to sexual assault on a child and aggravated incest. While incarcerated, defendant's husband learned of an inmate who purportedly could assist in setting up a murder for hire. He contacted that inmate regarding the murder of the prosecutor who handled his case. This inmate, unbeknownst to defendant's husband, had been assisting Department of Corrections (DOC) officials in discovering other inmates' plans to set up murders for hire. The inmate's main contact was a DOC investigator.

The investigator advised the inmate not to approach defendant's husband, but to keep him informed if defendant's husband pursued the plan. The inmate did not receive a sentence reduction for the information that he provided in this case.

Pursuant to DOC policy, the investigator later began to intercept correspondence and phone conversations between defendant and defendant's husband. Evidence was presented implying that defendant and her husband were devising a plan to kill her husband's prosecutor based upon the mistaken belief that her husband could be released from prison if they were successful.

Subsequently, the inmate received a note from defendant's husband stating: "I talked to my wife" and "she said the sooner the better ... her name is Serena." The note lists Serena's phone number and later states, "have him call my wife." The inmate passed the note on to the investigator, who, posing as a hit man, contacted defendant and her husband through notes and phone conversations. According to the investigator, in one phone conversation, defendant described the prosecutor in detail and agreed with the investigator on a price of $5000, with a vehicle as collateral. At the investigator's suggestion, defendant eventually met the investigator in a parking lot. They discussed how the investigator would do the killing, and defendant produced the unsigned title to the vehicle.

Defendant was charged with one count of solicitation of first degree murder and one count of conspiracy to commit first degree murder. The jury found her guilty only of the solicitation count. The trial court then sentenced her to a term of twelve years in the DOC.

## I.

Defendant contends that the trial court's limitation on cross-examination of three government witnesses was prejudicial error. We disagree.

The right to confront witnesses against a criminal defendant is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and includes the right to be given an opportunity for effective cross-examination. It is constitutional error to limit excessively a defendant's cross-examination of a witness regarding the witness' credibility. *People v. Gholston*, 26 P.3d 1, 8 (Colo.App.2000).

Nevertheless, the trial court has wide latitude to place reasonable limits on cross-examination based on concerns about such factors as confusion of the issues or interrogation that would be repetitive or only marginally relevant. *People v. Gholston, supra*, 26 P.3d at 8.

The trial court must exercise its discretion to preclude inquiries that have no probative value, are irrelevant, or are prejudicial. *People v. Hanna*, 981 P.2d 627, 630 (Colo.App.1998). To show that the court abused its discretion, a party must show that the court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Gholston, supra*, 26 P.3d at 8.

### A. Cross-examination of "Informant Inmate"

During direct examination, the inmate admitted that he had four prior felony convictions. On cross-examination, defense counsel attempted to impeach the inmate regarding the convictions. The prosecution objected, and the trial court sustained the

objection because each conviction had already been addressed on direct. The court explained to defense counsel, "If you want to question him as to something other than what he already said, you may." Defense counsel then proceeded to question the inmate about his age when he was convicted and the order in which he received the convictions. The defense also obtained an admission from the inmate that he had received a sentence reduction on one conviction in return for assistance on another murder for hire case.

Defendant has not demonstrated that the court's decision to preclude repetitive testimony regarding the prior felonies was manifestly arbitrary, unreasonable, or unfair. As such, we perceive no abuse of discretion. *See People v. Gholston, supra.*

### B. Cross-examination of DOC Investigator

■ On direct examination, the investigator testified about the recorded phone conversations between defendant and her husband and those between the investigator and defendant. He also testified regarding his conversation with defendant in which he posed as a hit man in a parking lot.

During cross-examination, defense counsel attempted to draw the investigator's attention to particular portions of the transcript of his recorded conversation with defendant by having him read those portions aloud. The court repeatedly refused to allow him to do so, sustaining the prosecution's objection that the transcript spoke for itself.

Defendant contends that the trial court allowed the prosecutor to have defendant read portions of the transcript during her cross-examination and that the defense similarly should have been allowed to have the investigator read particular portions to demonstrate that he was in control of his conversation with defendant. We disagree.

The transcript was admitted into evidence and available for argument and the jury's scrutiny. Reading it aloud, therefore, would have been repetitive.

We thus conclude that the trial court did not abuse its discretion in limiting the cross-examination. *See People v. Gholston, supra.*

### C. Cross-examination of the Prosecutor

■ The court refused to allow cross-examination of the prosecutor of defendant's husband as to the validity of that prosecution, specifically, whether a defendant's blood relation to the victim was an essential element of incest. The court ruled that the definition of incest was irrelevant to the charges against defendant and collateral to the case at hand.

Defendant contends that cross-examination on this issue should have been permitted because it would have helped establish that defendant's "beliefs regarding her husband were sincere and well grounded." Again, we disagree.

Such beliefs are irrelevant to the question of defendant's guilt. The fact that the jury asked a question about incest between blood and nonblood relatives is also irrelevant. *See People v. Woods,* 931 P.2d 530, 536 (Colo. App.1996)(a trial court acts within its discretion when it excludes evidence offered solely for impeachment purposes that will introduce collateral issues into the trial).

### II.

Defendant also contends that she suffered prejudicial error when the court refused to grant her motion for a mistrial after the prosecution published several pages from a transcript to the jury, contrary to a prior agreement to redact the first six pages of the transcript. We disagree.

■ A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by other means. Absent an abuse of discretion, a trial court's denial of a motion for mistrial will not be disturbed on appeal. *People v. Scott,* 10 P.3d 686, 689 (Colo.App.2000).

■ Here, prior to trial, the prosecution had agreed to redact the first six pages of the transcript of a taped telephone conversation that contained irrelevant but arguably prejudicial material. These pages contained a telephone conversation between defendant's husband and mother. However, that

portion of the transcript was mistakenly published to the jurors before the prosecutor, in the jury's presence, asked that the transcripts be returned for editing.

Defendant moved for a mistrial because the transcript was not redacted and argued that retrieving it made it appear to the jury that the defense was hiding evidence.

The trial court denied the motion, finding that (1) the jurors had possessed the transcripts for only about three minutes; (2) jurors were still inserting them into their notebooks when the prosecutor asked that they be withdrawn; (3) the court had not seen any juror reading beyond the first page of the document; and (4) nothing in the first page of the document was so prejudicial that a mistrial was a "manifest necessity."

Further, the court gave a curative instruction, at defense counsel's suggestion, that the redacted information recorded a conversation between defendant's husband and someone other than defendant, that the parties had agreed that those pages were irrelevant, and that the jurors who had read any portion of the redacted pages should disregard them.

Our review of the first few pages of the transcript does not reveal them to be highly prejudicial. Although they contain some profanity and references to taking money under false pretenses, they do not clearly refer to defendant's crime. Under these circumstances, we perceive no abuse of discretion in the trial court's denial of a mistrial, especially in light of the curative instruction that was given. *See People v. Dunlap,* 975 P.2d 723, 744 (Colo.1999)(reviewing court presumes that jury understood and heeded jury instructions).

### III.

We also disagree with defendant's contention that the trial court erred in applying the "inconsistent defenses" rule to reject her tendered entrapment instruction.

### A. Law of Entrapment

In Colorado, use of the entrapment defense is governed by § 18–1–709, C.R.S.2001, which provides:

> The commission of acts which would otherwise constitute an offense is not criminal if the defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.

Under § 18–1–710, C.R.S.2001, entrapment is an affirmative defense. *People v. Sprouse,* 983 P.2d 771, 775 (Colo.1999).

An affirmative defense instruction is one in which the defendant admits the doing of the act charged but seeks to justify, excuse, or mitigate it. *People v. Huckleberry,* 768 P.2d 1235, 1238 (Colo.1989); *People v. Mossmann,* 17 P.3d 165, 169 (Colo. App.2000); *People v. Whatley,* 10 P.3d 668, 670 (Colo.App.2000). To entitle a defendant to such an instruction, the supporting evidence must tend to establish each of the elements of the defense. *People v. Dooley,* 944 P.2d 590, 595 (Colo.App.1997).

Once a defendant introduces some credible evidence of an affirmative entrapment defense, the prosecution must prove beyond a reasonable doubt that the defendant was not entrapped. *People v. Sprouse, supra,* 983 P.2d at 775; *Evans v. People,* 706 P.2d 795, 800 (Colo.1985).

The entrapment statute creates a subjective test that focuses on the state of mind of a particular defendant, and it does not set a general standard for police conduct. The existence of any predisposition on the part of the defendant must be determined first, then the extent of any such predisposition must be considered in relation to the character of the inducements. *People v. Sprouse, supra,* 983 P.2d at 776.

■ Entrapment may be asserted as an affirmative defense only to the commission of acts that would otherwise constitute an offense. *Vega v. People*, 893 P.2d 107, 111 (Colo.1995).

In the overwhelming number of cases, resolution of the entrapment defense is properly reserved for the jury. *People v. Sprouse, supra*, 983 P.2d at 776; *see Bailey v. People*, 630 P.2d 1062, 1065 (Colo.1981)(entrapment is an affirmative defense to be submitted to the jury).

### B. Trial Court Ruling

At the close of evidence, defendant submitted instructions on an entrapment defense. Defendant argued that the conduct may have occurred as set forth in the evidence by the prosecution, but the culpable mental state did not exist, and her actions were the result of government entrapment. Thus, defendant argued that her conduct was the result of the opportunity given by the government. The prosecution responded that defendant's position was a general denial defense and that defendant did not admit the actions as required.

The trial court made no rulings on inducement or predisposition. Rather, the court agreed with the prosecution and held that the entrapment defense, as codified, assumes that an offense occurred. Therefore, the court reasoned, the defense did not apply because defendant denied that any crime was committed.

Specifically, the court explained that:

because of the language of the statute and the interpretation as in [*Bailey v. People, supra*] it appears to me that this is a traditional confession and avoidance defense, which is the defendant saying yes, I committed the crime, but the government made me do it. In this case there is no initial confession. In fact, the defendant has denied and all witnesses who have testified on her behalf have denied that she committed any offense. Without the confession, there is no avoidance because she is denying that she committed a criminal offense. So I will not be giving the tendered instructions.

### C. Inconsistent Defenses

Citing Paul Marcus, *The Entrapment Defense* § 6.18 (2d ed. 1995), defendant acknowledges that the inconsistent defenses rule traditionally held that the entrapment defense could not be raised unless the defendant admitted the crime.

Nevertheless, defendant contends that, under *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the United States Supreme Court and a majority of state courts have rejected the "inconsistent defenses" rule. Thus, according to defendant, the issue of entrapment should have been submitted to the jury. We are not persuaded.

*Mathews* provides that even if the defendant denies one or more elements of the crime, the defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment.

However, as the defense of entrapment is not of constitutional stature, Colorado is free to define it as it chooses. *People v. Sprouse, supra*, 983 P.2d at 775–76.

Because entrapment is an affirmative defense, it does not apply where a defendant denies committing the crime. *See People v. Sprouse, supra; People v. Huckleberry, supra; People v. Mossmann, supra.* Thus, we view the rule in Colorado to require a defendant to admit committing acts that would otherwise constitute an offense before being entitled to assert an affirmative defense of entrapment.

As a preliminary matter, contrary to defendant's assertion, it does not appear that the *Mathews* rule has been accepted by the majority of courts addressing the issue. *See* Timothy E. Travers, Annotation, *Availability in State Court of Defense of Entrapment Where Accused Denies Committing Acts Which Constitute Offense Charged*, 5 A.L.R.4th 1128 (1981)(referencing twenty-four states adopting the view that a defense of entrapment is not available to an accused who denies committing the acts which constitute the offense charged, and nine states holding the opposite).

Further, other states have rejected *Mathews* as not based on a constitutional analysis, but on "federal common law" and "general propositions." *See State v. Abrams,* 164 Ariz. 185, 791 P.2d 1068, 1069 (Ct.App.1990), *aff'd sub nom. State v. Soule,* 168 Ariz. 134, 811 P.2d 1071 (1991); *People v. Gillespie,* 136 Ill.2d 496, 145 Ill.Dec. 915, 557 N.E.2d 894, 897 (1990); *Moreno v. State,* 860 S.W.2d 612, 615 n. 2 (Tex.Ct.App.1993). *See also Vega v. Suthers,* 195 F.3d 573, 583 (10th Cir.1999)(defense of entrapment is not of constitutional dimension).

In *People v. Penson,* 184 Colo. 256, 258, 520 P.2d 110, 111 (1974), a case in which the defendant denied committing the offense, the supreme court stated that "while [a defendant] should not be required to admit guilt to obtain [an entrapment] instruction, his theory of entrapment must be supported by some evidence of instigation of the offense by the officer." However, the question of inconsistent defenses was not an issue in that case, and the statement appears to be dictum. The court went on to say that there was no such evidence in the case, and the decision there turns on the defendant's failure to present any evidence of entrapment.

*People v. Penson* also predates *Mathews* and has never been cited by any other reported case in Colorado, including the more recent decision in *People v. Sprouse, supra.* Further, the statutes and subsequent cases in Colorado addressing entrapment assume the defendant admits committing acts that would constitute the offense.

Section 18–1–709 presupposes the commission of acts that would constitute an offense. The statute thus includes phrases such as "[t]he commission of acts which would otherwise constitute an offense," "if the defendant engaged in the proscribed conduct," "would not have ... engaged in conduct of the sort induced," and "[m]erely affording a person an opportunity to commit an offense."

The supreme court in 1985 determined that the entrapment defense consisted of the following elements:

(1) the defendant must be a person who, but for the inducement offered, would not have conceived of or engaged in conduct of the sort induced, (2) the defendant *must in fact have engaged in the proscribed conduct* because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and not as a result of the defendant's own predisposition, (3) the methods used to obtain such evidence must have been such as to create a substantial risk that this particular defendant would engage in the sort of conduct induced, and (4) the methods used must have been more persuasive than merely affording the defendant an opportunity to commit an offense, even when such an opportunity was coupled with representations or inducements calculated to overcome the defendant's fear of detection.

*Evans v. People, supra,* 706 P.2d at 799 (emphasis added). These instructions were given without objection in *People v. Sprouse, supra,* 983 P.2d at 771 n. 2. *See* CJI Crim. 7:10 (1993).

Moreover, Colorado Supreme Court cases subsequent to *Mathews* have consistently applied the rule that an affirmative defense instruction is one in which the defendant admits doing the act charged, but seeks to justify, excuse, or mitigate it. *See People v. Huckleberry, supra.*

Nor does *People v. Mattas,* 645 P.2d 254 (Colo.1982), upon which defendant relies, support defendant's position. In *Mattas,* the trial court gave an involuntary intoxication instruction even though the defendant denied he was the person who committed the crimes. However, because the defendant did not object to the instruction, offer a substitute at trial, or include the asserted error in his motion for new trial, on appeal the supreme court did not consider the appropriateness of the instruction.

We conclude, therefore, that a defendant must admit having engaged in the proscribed conduct to be entitled to an entrapment instruction. *See Evans v. People, supra.*

### D. Defendant's Conduct

On appeal, defendant concedes meeting with the investigator, discussing the $5000 contract price, and tendering her vehicle as collateral, but denies any criminal intent. However, defendant testified at trial

and essentially denied engaging in any wrongdoing. While she did not deny meeting the investigator or providing him with the unsigned title to the vehicle, she testified she did not actually mean to hire a hit man, that she did not believe there ever was a hit man, and that the investigator was not a real hit man. In response to a question whether she ever wanted to have the district attorney killed, she responded that she did not, but rather wanted him to be in trouble for what he had done. She also testified she provided an unsigned title that was no good, that she believed she was being "set up" by DOC, that she had no plan to kill the district attorney, and that she and her husband were just "playing along."

Under these circumstances, we conclude that defendant's denial of wrongdoing precluded an instruction on entrapment. *See Bailey v. People, supra; People v. Whatley, supra.*

### IV.

Defendant further contends that, when the jury allegedly indicated it was at an impasse, the trial court erred by failing to inquire whether further deliberations would be fruitful and by improperly instructing the jury regarding further deliberations. We are not persuaded.

When a defendant actively participates in the preparation of a response to the jury, or expressly agrees to it, he or she is prevented from asserting error with respect to the response. *People v. Bielecki,* 964 P.2d 598, 608 (Colo.App.1998).

Here, the court conferred with counsel about each response to three notes from the jury. Defense counsel agreed with each of the court's responses to the notes. Accordingly, defendant cannot now complain that the responses were improper.

On the first full day of deliberations, the trial court received a note from a juror indicating that the juror wanted to talk to "somebody who knows the rules of jury" and had not been given all the information about a juror's role, and asking "what if a juror feels trapped." The trial court proposed responding with a stock response entitled "Questions during Deliberations." Defense counsel agreed to the trial court's response.

The jury sent a second note about two hours later. The note indicated that the juror desired to be excused and that all twelve jurors wanted to have the alternate. The trial court responded that a jury consists of all twelve persons and that the alternate had been excused and was not available. Again, the defense did not object.

Less than an hour later, the jury sent a third note. It indicated that one juror was "not responding to our questions or discussing the situation," had admitted to having "no respect for the law," and was "not following instruction." The note did not state the jury was at an impasse. The court proposed to instruct the jury that it could not answer or respond to the note. Defense counsel did not object, and, shortly thereafter, the jury reached its verdict. After the reading of the verdicts, the court polled the jury at defense counsel's request. All jurors responded affirmatively to the question whether what the court had read represented the verdicts.

Defendant moved for a mistrial, claiming that deliberations had broken down and the trial court should have intervened. The court denied defendant's motion, pointing out that defendant had agreed to each response given. Because of defendant's agreement with the responses, we agree with the trial court.

Further, the modified *Allen* instruction, which defendant contends that the trial court should have given, is not mandatory under these circumstances. The instruction applies when "deliberations have been *somewhat lengthy* without a verdict being reached." CJI Crim. 38:14 (1983)(emphasis added). Here, the jury had deliberated only about three hours at the time of the third note and completed its deliberations only a few hours later.

Accordingly, we perceive no abuse of discretion in the trial court's failure to provide the instruction.

The judgment is affirmed.

Judge PLANK and Judge ROY concur.