The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Gonzalo Dalimiro SANTANA, Defendant–Appellant.

No. 08CA0978.

Colorado Court of Appeals, Div. I.

July 23, 2009.

Rehearing Denied Sept. 3, 2009.*

* Taubman, J., would grant.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Leslie A. Goldstein L.L.C., Leslie A. Goldstein, Steamboat Springs, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Gonzalo Dalimiro Santana, was convicted by a jury of distribution of a controlled substance and was sentenced to four years of probation. We hold that the prosecution improperly suggested to the jury that defendant had an obligation to test the drugs at issue to determine whether they were crack cocaine, and thus placed a burden of proof on defendant. Because we cannot conclude that this suggestion was harmless beyond a reasonable doubt on the facts of this case, we reverse defendant's conviction and remand for a new trial.

## I. Background

On January 10, 2007, members of the vice and narcotics unit of the Aurora Police Department conducted an undercover operation in an attempt to contact individuals who might be involved in, among other things, street-level sales of narcotics. During that operation, an undercover officer encountered defendant. After the officer made initial eye contact with defendant, defendant nodded, waved at the officer, and shouted, "You want dope?" The officer left the area and alerted

the other members of the operation of his interaction with defendant. He then activated his electronic monitoring device and returned to the area in which he had encountered defendant.

Defendant then approached the officer's car and climbed into it. The officer asked defendant for $40 of crack cocaine, and defendant indicated that he knew of a location where he could get it. Defendant directed the officer to drive to a certain address, at which time defendant took $20 from the officer, entered the house, and returned with a single whitened colored rock that the officer recognized to be similar in texture and appearance to crack cocaine. The officer then gave defendant an additional $20 bill, and defendant went back into the house and emerged with another rock-like substance that appeared, to the officer, to be more crack cocaine. Defendant was then arrested.

Shortly thereafter, a second police officer advised defendant of his *Miranda* rights. Defendant indicated that he was willing to speak with the officer. The officer then informed defendant that he had been arrested for selling drugs to an undercover officer. Defendant immediately replied, "I'm not the drug dealer. They're inside that house." Defendant also told the officer that he had purchased crack cocaine from the individuals in the house four times within the week prior to his arrest.

At trial, defendant did not contest that he had participated in the interactions with the undercover officer. Defendant argued, however, that the prosecution had not proved that the rock-like substance was actually crack cocaine. Over defendant's objections, the district court admitted into evidence a report regarding a preliminary chemical analysis performed on the substance. The results of this preliminary field test indicated that the substance was cocaine.

To rebut this evidence, defendant called a chemist as an expert witness to discuss the reliability of this type of field test. The expert testified that field tests of this sort are primarily used to screen out substances that are definitely not drugs, to save the expense and time involved in further, more definitive testing. He stated that the sort of field test used in this case does not prove positively that a substance is a particular drug, but rather it gives a preliminary or presumptive result that it could be a drug. He testified that this type of test is not scientifically valid and that based on the report admitted into evidence in this case, it was not possible to determine within a reasonable degree of scientific certainty whether or not the substance at issue was, in fact, cocaine. Finally, he stated that in order to make a positive determination regarding the composition of the substance, it would be necessary to perform laboratory tests involving mass spectrometry.

During the prosecution's cross-examination of this expert, the prosecutor asked the witness whether he could have performed an analysis on the alleged cocaine in this case. Defendant objected on the ground that the prosecution was improperly suggesting that the defendant had the obligation to do any kind of tests or introduce any kind of proof. The court responded, "Well, I think [the prosecutor] is aware he can't do that, because then he would be faced with a motion for mistrial."

Minutes later, however, the prosecutor asked the witness whether he had personally performed tests to determine the composition of the alleged crack cocaine. The witness testified that he had not done so. Defendant then moved for a mistrial, noting that this was exactly where he feared the prosecution was going to go. Specifically, defendant argued that the prosecution had improperly suggested that defendant had an obligation to test the alleged cocaine. The court denied the mistrial motion and took no other action regarding this testimony, although it stated, "[I]f necessary I'll renew my affirmation that the defense has no burden in this case, that the burden is solely on the People."

This testimony was not addressed again until closing arguments, when the prosecution reminded the jury that defendant's expert did not do any analysis of his own, but rather relied exclusively on just a few documents. Specifically, the prosecution argued,

"He didn't tell you about any analysis he did."

At the conclusion of the prosecution's closing argument, defendant made a record regarding the prosecution's "constant inference that the defendant has an obligation to present evidence." Defendant asserted that the prosecution's argument "clearly put on the defendant the burden of making an analysis or making a statement." Defendant objected to such perceived burden-shifting and again moved for a mistrial. The court overruled the objection and denied the mistrial motion, finding that the prosecution's argument was merely a comment on the evidence.

The jury found defendant guilty of distribution of a controlled substance. Defendant then filed a motion for judgment of acquittal, which the district court denied. Defendant now appeals his conviction.

## II. Motion for Judgment of Acquittal

Defendant contends that the district court erred in denying his motion for judgment of acquittal. Because a finding in favor of defendant on this issue would prohibit the prosecution, under double jeopardy principles, from trying him again, *see People v. Sisneros*, 44 Colo.App. 65, 67, 606 P.2d 1317, 1319 (1980), we address it first.

Defendant argues that the results of the presumptive test on the alleged cocaine were insufficient to prove, beyond a reasonable doubt, that the substance was, in fact, cocaine. Therefore, he asserts, the evidence was insufficient to support the jury's verdict. We are not persuaded.

■ When reviewing a motion for judgment of acquittal, the district court must determine whether the defendant's guilt of the crime charged has been established beyond a reasonable doubt. *People v. Zaring*, 190 Colo. 370, 372, 547 P.2d 232, 233 (1976). The evidence, both direct and circumstantial, is viewed in the light most favorable to the prosecution, and it "must be substantial and sufficient to support the conclusion by a reasonable mind that the defendant is guilty of the crime charged beyond a reasonable doubt." *Id.*

Here, the evidence at trial included the following:

- Testimony of the undercover officer that defendant approached him and asked him, "You want dope?" The officer testified that he understood this to mean that defendant either had drugs or knew where the officer could purchase drugs.
- Testimony of the undercover officer that defendant indicated his ability to obtain crack cocaine for the officer's use and that he purported to have done so, accepting money and twice leaving and returning with white, rock-like substances.
- Testimony of the undercover officer that the substances that he received from defendant appeared to be crack cocaine.
- A presumptive field test of the rock-like substances stating that preliminary analyses indicated the presence of cocaine.

■ Applying the standards set forth above, we conclude that this evidence, viewed in the light most favorable to the prosecution, is sufficient to support defendant's conviction for distribution of a controlled substance, absent other errors requiring reversal. Accordingly, we perceive no error in the district court's denial of defendant's motion for judgment of acquittal.

## III. Shifting the Burden of Proof

Defendant next argues that the district court erred in denying his various motions for mistrial, after the prosecution improperly shifted the burden of proof to him. Defendant contends that the prosecution did so when it established with defendant's expert witness that he had not performed tests on the substance alleged to be crack cocaine and when it then emphasized in closing argument the expert's failure to do so. We agree.

■ "In the absence of a constitutional violation, it is well-established that the decision to grant or deny a motion for a mistrial is directed to the sound discretion of the trial court." *People v. Chastain*, 733 P.2d 1206, 1213 (Colo.1987). "A mistrial is a drastic remedy and is warranted only if the prejudice to the accused is too great to be remedied by other means." *People v. Rosa*, 928 P.2d 1365, 1372 (Colo.App.1996).

■ We will not disturb the decision of the district court absent a gross abuse of discretion and prejudice to the defendant. *Id.* We will, however, reverse the denial of a motion for mistrial when "fundamental fairness" so requires. *See People v. Musgrave,* 187 Colo. 135, 137, 529 P.2d 313, 314 (1974) (mistrial should have been granted when defendant was denied access to identity of confidential informant); *People v. Goldsberry,* 181 Colo. 406, 408–10, 509 P.2d 801, 802–04 (1973) (in prosecution for receiving stolen goods, where witness testified regarding unrelated criminal activity by defendant, trial court abused its discretion in denying mistrial notwithstanding instruction to jury to disregard the testimony and order striking such testimony; where the evidence of guilt was not overwhelming, a new trial was required where the admission of improper evidence was so highly prejudicial that "it [was] conceivable that but for its exposure, the jury may not have found the defendant guilty"); *Salas v. People,* 177 Colo. 264, 265–66, 493 P.2d 1356, 1357 (1972) (mistrial was required "in order to prevent a denial of justice" when witness mentioned defendant's conviction in previous trial on same charges, notwithstanding court's curative instruction).

■ The Due Process Clause protects a defendant against conviction unless every element of the crime for which the defendant is charged is proved beyond a reasonable doubt. *People v. Clark,* 214 P.3d 531, 540–41 (Colo.App.2009). The prosecution bears the burden of proving each element of the crime, and a defendant may not be called upon to prove that he or she did not commit a crime. *Id.* "Accordingly, the prosecution cannot place upon a criminal defendant the burden of proving innocence through the testing of evidence." *Id.* Moreover, "[i]n some circumstances, improper questioning of an expert witness could imply to jurors that a defendant carries this burden." *Id.*

The division's recent decision in *Clark* illustrates this point. In *Clark,* an expert testified for the prosecution that a carpet sample taken from the crime scene had tested presumptively positive for the presence of semen. *Id.* at 541. The defense then cross-examined the witness and elicited the fact

that a conclusive test could have confirmed the presence of semen, but that the test was not performed because it would have consumed the sample, in violation of the requirement that a portion of every stain be set aside for future retesting, typically by the defense. *Id.* at 541. On redirect examination, the prosecutor then asked the expert whether the defendant had performed any testing on the stain. *Id.* at 541. The defendant objected, but the court overruled the objection. *Id.* at 541. The division concluded, however, that the prosecutor's question as to whether the defendant had performed any testing was improper, because it might have implied that the defendant had an obligation to prove his innocence. *Id.* at 541.

■■ Even where a court errs in allowing the prosecution to pursue a line of questioning like that at issue here, which suggested that defendant bore some burden of proof in violation of the Due Process Clause, we will not reverse the conviction if the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). An error is not harmless beyond a reasonable doubt if "'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id.* at 23, 87 S.Ct. 824 (quoting *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)).

■ Here, the following exchanges took place between the prosecution and defendant's expert witness:

Q. Could you have performed analysis on the suspected cocaine in this case—

A. Yes, sir.

Q.—if provided to you?

A. Yes.

Q. Would that have been difficult for you to do?

A. Not terribly. It's not cheap, but it's—

Q. But it's something that can be done?

A. It can be done, yes.

and subsequently:

Q. You've been hired by defense counsel in this case?

A. Yes, sir.

Q. I assume there's a fee for your services here?

A. Actually, in this case, I am doing it for free.

Q. You're doing this for free?

A. Yes.

Q. Out of the good nature of your heart?

A. Yes.

Q. If you were to test this [the alleged crack cocaine], you're confident that you could tell us if it was cocaine?

A. Yes, sir.

Q. And if given the opportunity, you would have happily done that?

A. Yes, sir.

As noted above, the prosecution then emphasized this testimony in its closing argument.

For the same reasons discussed by the division in *Clark*, we conclude that the prosecution's cross-examination of defendant's expert improperly shifted the burden of proof to defendant, because the question clearly but erroneously implied to the jury that defendant had some obligation to prove his innocence. Indeed, when defendant first raised his concern as to where the prosecution's inquiry was heading, the court itself stated that the prosecutor was aware that he could not go there, "because then he would be faced with a motion for mistrial," which is precisely what happened.

■ The question thus becomes whether this constitutional error was harmless beyond a reasonable doubt and, if not, whether the district court abused its discretion in denying defendant's motions for a mistrial. For the following reasons, we conclude that the error was not harmless beyond a reasonable doubt and that a new trial is required.

The sole contested issue in this case was whether the prosecution had proved that the substance that defendant delivered to the undercover officer was crack cocaine. Perhaps surprisingly, the evidence on this issue was somewhat thin. For reasons undisclosed in the record, the prosecution did not present the testimony of a laboratory technician to verify that the substance at issue was formally tested through scientifically accepted means and was, indeed, cocaine. Instead, the prosecution introduced through a police officer only a preliminary field report indicating that the substance was cocaine. Defendant then introduced substantial expert testimony, which was largely unrebutted, showing that preliminary field reports such as the one on which the prosecution relied here are not scientifically valid to prove the presence of cocaine. Rather, the expert testified, such tests are useful only to screen out substances that are definitively *not* cocaine, and that the only way to confirm the presence of cocaine would be through laboratory tests involving mass spectrometry.

With no contrary evidence in hand, the prosecution cross-examined defendant's expert and established, over defendant's repeated objections, that the expert had not tested the substance himself but could easily have done so had he been asked. In our view, this testimony and the prosecution's closing argument clearly suggested to the jury that defendant had some duty to test the substance and thus to prove his innocence by showing that the substance was not cocaine. Further, this evidence and argument improperly suggested that defendant chose not to ask his expert to test the substance because the expert would likely have found it to be crack cocaine, an inference that would have substantially bolstered the prosecution's limited evidence on this point.

Finally, although the district court recognized the impropriety of any inquiry by the prosecution suggesting that defendant had some burden of proof and indicated that it would, "if necessary," renew its affirmation that the defense had no such burden, the court took no action at the time the evidence at issue was introduced to remedy its erroneous admission. Nor did the court provide an instruction to remedy that error either at the time or at any other time in the case. The sole instruction given to the jury as to the burden of proof was a standard burden of proof instruction at the conclusion of the evidence.

These facts are in stark contrast to those that led the division in *Clark* to conclude that the burden-shifting errors at issue there were harmless beyond a reasonable doubt. In *Clark*, unlike here, the expert who was

asked whether the defendant had tested the DNA at issue did not know the answer to that question. Moreover,

> [t]he remainder of the trial proceedings served to deemphasize the question. Defendant stated in closing argument that he had no obligation to test the carpet stain. The prosecution's closing argument did not reference whether defendant tested the stain, nor did the prosecutor argue that defendant had any obligation to do so. Additionally, the trial court provided the jury with instructions that clearly placed the burden of proof on the prosecution.

*Clark*, 214 P.3d at 541.

Here, defendant's expert directly answered the improper question as to whether he had tested the substance at issue. Moreover, the remainder of the proceedings did not deemphasize this question. To the contrary, the prosecution returned to it in closing argument. Nor do we agree that the line of questioning at issue and the prosecution's closing argument were merely comments on the evidence or challenges to the expert's credibility. Taken together, this evidence and argument unmistakably conveyed to the jury that defendant had a duty to test the substance at issue.

On these particular facts, and given the critical nature of the drug identification issue in this case, we conclude that the error in allowing this evidence and argument was not harmless beyond a reasonable doubt. We further conclude that the constitutional error in this case requires that defendant receive a new trial.

When a trial court errs in admitting certain evidence and the error is of constitutional dimension, reversal is required unless the error was harmless beyond a reasonable doubt. *Clark*, 214 P.3d at 540. The question presented here is whether the same standard should apply to a trial court's decision to deny a mistrial motion, where the underlying error was of constitutional dimension and the mistrial motion was made at the time of the error. Although no Colorado court appears to have addressed this question directly (some have done so implicitly), other jurisdictions have held that constitutional harmless error review applies in such circumstances.

*See, e.g., United States v. Guerra*, 293 F.3d 1279, 1289 (11th Cir.2002) ("The 'constitutional harmless error' standard applies to review of a denial of a motion for mistrial on the basis of an alleged violation of Fifth Amendment Right against self-incrimination."); *State v. Easter*, 130 Wash.2d 228, 922 P.2d 1285, 1288, 1292 (1996) (holding that where defendant moved for a mistrial following closing argument by prosecution alleged to have violated his constitutional rights, the state bore the burden of proving that any constitutional error was harmless).

 We agree with the decisions from these other jurisdictions and thus conclude that the proper standard of review of a trial court's ruling on a motion for mistrial, where the motion was based on an error of constitutional dimension and the mistrial motion was made at the time of the error, is the constitutional harmless error standard, rather than the abuse of discretion standard typically applied on review of rulings on mistrial motions. We express no opinion as to the standard to be applied when, unlike here, a party fails to make a contemporaneous objection or motion for mistrial. Because we have determined that the error in admitting the evidence at issue was not harmless beyond a reasonable doubt, we conclude that the court erred in denying defendant's mistrial motion, and defendant is entitled to a new trial.

### IV. Other Issues

Because certain of the other issues raised by defendant are likely to arise again on retrial, we address them here.

### A. Opinion Testimony by Police Officer

 Defendant argues that the district court erred in allowing a police officer to offer what defendant argues was essentially expert testimony regarding the results of the preliminary analyses of the alleged cocaine. We disagree.

Under Colorado law, laboratory reports can be accepted into evidence in more than one way.

> Any report or copy thereof or the findings of the criminalistics laboratory shall be received in evidence in any court, prelimi-

nary hearing, or grand jury proceeding in the same manner and with the same force and effect as if the employee or technician of the criminalistics laboratory who accomplished the requested analysis, comparison, or identification had testified in person. Any party may request that such employee or technician testify in person at a criminal trial on behalf of the state before a jury or to the court, by notifying the witness and other party at least ten days before the date of such criminal trial.

§ 16–3–309(5), C.R.S.2008.

Here, defendant did not file the statutorily required request that the technician or chemist testify in person. Accordingly, we conclude that the district court did not err in allowing a police officer to introduce the preliminary field test into evidence. *See People v. Cruthers*, 124 P.3d 887, 889 (Colo.App. 2005) ("[T]he People may prove an element of the charge using a laboratory report either 'by subpoenaing the [technician] and presenting her at trial, or by simply introducing the lab report.'") (quoting *People v. Mojica–Simental*, 73 P.3d 15, 18 (Colo.2003)).

Nor did the police officer improperly provide expert testimony. A police officer's testimony is objectionable when what is essentially expert testimony is improperly admitted under the guise of lay opinions. *People v. Stewart*, 55 P.3d 107, 123 (Colo.2002). An officer's testimony crosses the line from lay to expert testimony when it is based on his or her specialized training or education. *Id.* Where, on the other hand, the officer's testimony is based solely on his or her perceptions and observations, it is not improper expert opinion. *Id.*

Here, the officer offered no opinions at all, expert or otherwise. Rather, the officer did no more than authenticate the document and read into evidence its one sentence. Thus, he testified, "This document states that the preliminary analysis of Item No. 3 indicated the presence of cocaine and the result of point 06 net grams." The officer offered no testimony regarding the basis for the report, no opinion regarding the results of the test, and no explanation regarding the testing methodology. Although the officer's testimony was perhaps cumulative of the text of the document, an issue that defendant has not raised, it was not improper expert testimony.

## B. Entrapment Instruction

Defendant further contends that the district court erred by failing to tender his requested entrapment instruction to the jury. We are not persuaded.

■■■■ Entrapment is an affirmative defense. § 18–1–709, C.R.S.2008; *People v. Hendrickson*, 45 P.3d 786, 790 (Colo.App. 2001). "An affirmative defense instruction is one in which the defendant admits the doing of the act charged but seeks to justify, excuse, or mitigate it." *Hendrickson*, 45 P.3d at 790. "Because entrapment is an affirmative defense, it does not apply where a defendant denies committing the crime. Thus, we view the rule in Colorado to require a defendant to admit committing acts that would otherwise constitute an offense before being entitled to assert an affirmative defense of entrapment." *Id.* at 791 (citations omitted).

Colorado law defines the crime of distribution of a controlled substance as follows: "[With exceptions not relevant here], it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell, or distribute a controlled substance ...." § 18–18–405(1)(a), C.R.S.2008. The definition of schedule II controlled substances, in turn, includes cocaine and its derivatives. § 18–18–204(2)(a)(IV), C.R.S.2008.

As noted above, defendant vigorously challenged the prosecution's assertion that the substance he gave to the undercover officer was, in fact, crack cocaine. Because a person must distribute a *controlled substance* in order to commit the crime with which defendant was charged, by disputing that the composition of the substance that he distributed was crack cocaine, defendant did not admit all elements of the charged crime. Accordingly, the district court correctly refused defendant's tendered entrapment instruction. *See Hendrickson*, 45 P.3d at 793.

## C. *Miranda* Waiver

Finally, we note that defendant claims on appeal that the district court erred in deny-

ing his motion to suppress certain incriminating statements that he made to the police after his arrest because these statements were obtained in violation of his *Miranda* rights. Although defendant is correct that the court denied his motion to suppress the statements on that ground, the court excluded the statements on other grounds. Because the latter ruling is not at issue in this appeal, and because the *Miranda* issue may or may not arise again on retrial, we will not address the *Miranda* issue here.

## V. Conclusion

For the foregoing reasons, the judgment is reversed, and the case is remanded for a new trial.

Judge NIETO ** concurs.

Judge TAUBMAN dissents.

Judge TAUBMAN dissenting.

I agree with the majority's analysis, except its conclusion that the prosecution's actions that improperly shifted the burden of proof to defendant did not constitute constitutional harmless error. *See Crider v. People,* 186 P.3d 39, 42 (Colo.2008) (reviewing court must be convinced beyond a reasonable doubt of lack of prejudicial impact resulting from constitutional error). Because of the inculpatory evidence against defendant addressed in part II of the majority opinion concerning defendant's motion for acquittal, I would conclude that the trial court did not abuse its discretion in denying his various motions for mistrial. That evidence, which included defendant's statement to the second police officer that he had purchased crack cocaine from the individuals in the house four times within a week's time and prior to his arrest, dispels any doubt in my mind regarding the likelihood defendant would have been convicted, even if the prosecution had not elicited testimony from defendant's expert that he had not performed tests on the alleged crack cocaine and the prosecutor had not mentioned this during his closing argument.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

I would conclude that there is no reasonable possibility that the evidence complained of and the prosecutor's reference to it in his closing argument might have contributed to defendant's conviction. Accordingly, I respectfully dissent.

