2012 COA 91

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Donald Eugene TAYLOR, Defendant–Appellant.**

No. 09CA2681.

Colorado Court of Appeals, Div. V.

June 7, 2012.

John W. Suthers, Attorney General, Katherine A. Hansen, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Jon W. Grevillius, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

¶1 Defendant, Donald Eugene Taylor, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to distribute a scheduled II controlled substance. In part, defendant appeals an order refusing to suppress evidence discovered during a warrantless search of the call history contained in his cellular telephone on his person at the time of his arrest. We conclude the search of defendant's cell phone was a lawful search incident to arrest, and, therefore, discern no error in the trial court's refusal to suppress that evidence. We reject defendant's remaining contentions and affirm the judgment of conviction.

## I. Background

¶2 The material facts are not in dispute. On November 20, 2008, undercover officers C.S. and J.W. of the Aurora Police Department were conducting sting operations on the East Colfax corridor. Detective C.S. and Investigator J.W. were patrolling in an undercover police car when they observed defendant making gestures at them consistent with initiating a drug transaction.

¶3 The officers approached defendant and Investigator J.W. asked if he "could get a hookup." Defendant asked, "[H]ook you up with what?" to which Investigator J.W. replied, "[F]orty hard," street slang for $40 worth of crack cocaine. Defendant responded that he did not sell drugs, but he indicated that he could call someone to sell them the drugs. Defendant then instructed the officers to park across the street.

¶4 The officers observed defendant make a phone call on his cellular telephone, and soon thereafter a female approached and entered the car. Investigator J.W. purchased $40 of crack cocaine from the woman. After the controlled purchase, both defendant and the woman were arrested.

¶5 After defendant was arrested, he was searched and his cell phone was seized. One of the arresting officers, Sergeant R., opened the call log history of defendant's cell phone, noting a call was recently placed to the woman's phone.

¶6 Defendant was charged with distribution of a controlled substance and conspiracy to distribute a controlled substance. Following a jury trial, defendant was convicted of conspiracy to distribute and the jury deadlocked on the distribution count. The court dismissed the distribution count, and sentenced defendant to eight years in community corrections.

## II. Motion to Suppress

¶7 Defendant contends he was subject to an unlawful search when the police reviewed his cellular telephone's call log without obtaining a warrant.[1] We disagree and conclude the search of the cell phone's call history was a lawful search incident to arrest, and, therefore, we affirm the denial of the suppression motion.[2]

---

1. In this case, there is no dispute that the custodial arrest of defendant was lawful. Defendant further does not contend the warrantless seizure of the phone was illegal. Rather, defendant only challenges the validity of the warrantless search of the phone's call log.

2. In his reply brief, defendant contends the People failed to raise this issue with the trial court, and, therefore, the argument is surrendered on appeal. However, the trial court chose to decide defendant's suppression motion in part on a conclusion that the search constituted a lawful search incident to arrest, and consequently we review that ruling here. *Cf. People v. Salazar,*

¶ 8 The issue before an appellate court in a suppression case is one of mixed law and fact. *People v. Alameno*, 193 P.3d 830, 834 (Colo.2008). We must defer to the trial court's findings of fact if those findings are supported by competent evidence in the record, but we review the trial court's legal conclusions de novo. *People v. Gothard*, 185 P.3d 180, 183 (Colo.2008). At a suppression hearing, a defendant has the burden of demonstrating that he is entitled to protection under the Fourth Amendment.[3] *People v. Galvadon*, 103 P.3d 923, 927–28 (Colo.2005). "Evidence that the police did not have a warrant authorizing their search and seizure satisfies that burden." *People v. Syrie*, 101 P.3d 219, 222 (Colo.2004).

¶ 9 At the suppression hearing, the trial court ruled the seizure of defendant's cell phone was lawful. The court then ruled the search of the call log was lawful, first, because it was a search incident to arrest and second, because the call log was in plain view. Based upon an objection by defense counsel, the trial court further ruled that the search of the call history was also proper based upon exigent circumstances.

¶ 10 For present purposes we assume, as apparently did the trial court, two propositions: First, defendant had a reasonable expectation of privacy in his cellular telephone's call history[4] and second, the officer's review of the call history constituted a warrantless search within the meaning of the Fourth Amendment.

¶ 11 Under the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution, warrantless searches are per se unreasonable unless they fall under a specifically established and well-delineated exception to the warrant requirement. *City of Ontario v. Quon*, —— U.S. ——, ——, 130 S.Ct. 2619, 2630, 177 L.Ed.2d 216 (2010) ("Although as a general matter, warrantless searches 'are *per se* unreasonable under the Fourth Amendment,' there are 'a few specifically established and well-delineated exceptions' to that general rule.") (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *People v. Revoal*, 2012 CO 8, ¶ 10, 269 P.3d 1238. "The burden of proof ... always remains with the prosecution to establish that a warrantless search falls within one of the narrowly defined exceptions to the warrant requirement." *Syrie*, 101 P.3d at 222; *see People v. Winpigler*, 8 P.3d 439, 443 (Colo.1999).

¶ 12 One specifically established exception to the Fourth Amendment's warrant requirement is "a search incident to lawful

964 P.2d 502, 507 (Colo.1998) ("It is axiomatic that issues not raised in *or decided by* a lower court will not be addressed for the first time on appeal.") (emphasis added).

3. Defendant argued in his motion to suppress that the search of his cellular telephone's call log violated his right to be free from unlawful searches and seizures under the United States Constitution, Colorado Constitution, and Colorado statutes. Because Colorado has not departed in any significant way from federal analysis of searches incident to arrest, we find those cases analyzing the Fourth Amendment persuasive. *See, e.g., People v. Bischofberger*, 724 P.2d 660, 664 (Colo.1986) (applying federal Fourth Amendment search incident to arrest principles to Colorado); *People v. Tottenhoff*, 691 P.2d 340, 345 (Colo.1984).

4. Other courts to consider this issue have found a reasonable expectation of privacy in a cellular telephone's call history. *See, e.g., United States v. Finley*, 477 F.3d 250, 259 (5th Cir.2007) (finding legitimate expectation of privacy in call history of cell phone); *United States v. Gomez*, 807 F.Supp.2d 1134, 1140 (S.D.Fla.2011) ("the weight of authority agrees that accessing a cell phone's call log or text message folder is considered a 'search' for Fourth Amendment purposes"); *United States v. Wurie*, 612 F.Supp.2d 104, 109 (D.Mass.2009) ("It seems indisputable that a person has a subjective expectation of privacy in the contents of his or her cell phone."); *United States v. De La Paz*, 43 F.Supp.2d 370, 372 (S.D.N.Y.1999) (finding legitimate privacy expectation in the fact that calls were received and in the identity of the callers); *State v. Boyd*, 295 Conn. 707, 992 A.2d 1071, 1080–81 (2010) (reasonable expectation of privacy in cell phone); *but see United States v. Mercado–Nava*, 486 F.Supp.2d 1271, 1276 (D.Kan. 2007) (when cell phones were taken from defendant's person but defendant did not assert ownership of cell phones, did not testify as to expectation of privacy in cell phones, and did not present testimony that he had a legitimate possessory interest in cell phones or had taken steps to ensure his privacy in them, defendant had no reasonable expectation of privacy in content of cell phones).

arrest." *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Syrie,* 101 P.3d at 222. This exception "allows law enforcement officers, when making a lawful arrest, to search an arrestee's person and the area within the arrestee's immediate control." *Gothard,* 185 P.3d at 184. When searching the arrestee's person, the "search require[s] no independent justification, such as a reasonable suspicion or belief that the defendant might be armed or in possession of contraband." *People v. Tottenhoff,* 691 P.2d 340, 345 (Colo.1984); *People v. Bischofberger,* 724 P.2d 660, 664 (Colo.1986). "These searches incident to a lawful arrest must be contemporaneous with or immediately following the arrest and confined to an area into which the defendant might reach or grab for weapons or evidence." *Gothard,* 185 P.3d at 184.

¶ 13 Neither the United States Supreme Court nor the Colorado Supreme Court has directly considered the issue of whether a search incident to arrest may include a search of a cell phone's contents, and if it does, how thorough the search might be. We conclude, under the circumstances present in this case, that the search of defendant's cell phone's call history was a lawful search incident to arrest.

¶ 14 In *Robinson,* 414 U.S. at 235, 94 S.Ct. 467, the Supreme Court explained the basis for searches incident to arrest:

A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm or to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional

justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

¶ 15 Several years after *Robinson* was decided, the Supreme Court limited the area available for search incident to arrest to the arrestee's person and areas "within the immediate control" of an arrestee. *United States v. Chadwick,* 433 U.S. 1, 14–15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). What constitutes "within the immediate control" of an arrestee has been expanded and limited by the Court in the years since its inception. *Compare New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ("[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (footnote omitted)), *with Arizona v. Gant,* 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (rejecting a broad reading of *Belton* and concluding police are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'") (quoting *Thornton v. United States,* 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004)). However, the Supreme Court has not limited its holding of a "full search" upon an arrestee's person. *See United States v. Edwards,* 415 U.S. 800, 804–05, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) ("With or without probable cause, the authorities were entitled at that point not only to search [the defendant's] clothing but also to take it from him and keep it in official custody.... The police were also entitled to take from [the defendant] any evidence of the crime in his immediate possession, including his clothing."); *see also Bischofberger,* 724 P.2d at 664 ("[I]n the context of the Fourth Amendment the scope of a search incident to a *lawful custo-*

*dial arrest* is quite broad. The search need not be limited to a mere pat-down of the arrestee's outer clothing, but may extend to pockets and other containers, opened or closed, found on the person of the arrestee or within his immediate reach.").

¶ 16 The weight of authority applies *Robinson* and *Edwards* to find that a search of the contents of a defendant's cellular telephone or other personal electronic device is a lawful search incident to arrest. *See, e.g., United States v. Murphy,* 552 F.3d 405, 411 (4th Cir.2009) ("Citing the 'manifest need ... to preserve evidence,' this Court has held on at least two prior occasions, albeit in unpublished opinions, that officers may retrieve text messages and other information from cell phones and pagers seized incident to an arrest."); *United States v. Finley,* 477 F.3d 250, 259–60 (5th Cir.2007) ("Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial.... The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person."); *United States v. Gomez,* 807 F.Supp.2d 1134, 1143 (S.D.Fla.2011) ("[I]t is still well established that any objects found on an arrestee's person, on his clothing, on any area within his immediate control, may be searched by law enforcement, *with or without* any reason to suspect that the person is armed or carrying contraband."); *United States v. Davis,* 787 F.Supp.2d 1165, 1170 (D.Or.2011) ("Courts have generally permitted law enforcement officers to conduct warrantless searches of cell phones in cases involving drug-trafficking, where evidence of the crime is likely stored on the phones."); *United States v. Hill,* 2011 WL 90130, *6 (N.D. Cal. No. CR 10–00261 JSW, Jan. 10, 2011) (unpublished order) ("[U]nder *Robinson* and its progeny, when law enforcement officers discover a personal effect on that person, the officers may search that item and the propriety of the search 'does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.' ") (quoting *Robinson,* 414 U.S. at 236, 94 S.Ct. 467); *Wurie,* 612 F.Supp.2d at 110 ("I see no principled basis for distinguishing a warrantless search of a cell phone from the search of other types of personal containers found on a defendant's person that fall within the *Edwards–Lafayette* exceptions to the Fourth Amendment's reasonableness requirements."); *People v. Diaz,* 51 Cal.4th 84, 119 Cal.Rptr.3d 105, 244 P.3d 501, 505–06 (2011) ("We hold that the cell phone was 'immediately associated with [defendant's] person,' and that the warrantless search of the cell phone therefore was valid. As the People explain, the cell phone 'was an item [of personal property] on [defendant's] person at the time of his arrest and during the administrative processing at the police station.' In this regard, it was like the clothing taken from the defendant in *Edwards* and the cigarette package taken from the defendant's coat pocket in *Robinson,* and it was unlike the footlocker in *Chadwick,* which was separate from the defendants' persons and was merely within the 'area' of their 'immediate control.' " (citation omitted)); *Smallwood v. State,* 61 So.3d 448, 460 (Fla.Dist.Ct.App.2011) *(review granted* Sept. 1, 2011) ("The Supreme Court has clearly and repeatedly found that anything found on an arrestee or within an arrestee's immediate control may be searched and inspected upon arrest. There is nothing in the language of any of these cases that would permit this court to find an exception for cell phones."); *cf. United States v. Flores–Lopez,* 670 F.3d 803, 810 (7th Cir.2012) ("Looking in a cell phone for just the cell phone's phone number does not exceed what decisions like *Robinson* and [*United States v.*] *Concepcion* [942 F.2d 1170 (7th Cir.1991)] allow."); *but see Schlossberg v. Solesbee,* 844 F.Supp.2d 1165, 1170 (D.Or.2012) (finding warrantless searches of personal electronic devices "not reasonable incident to a valid arrest absent a showing that the search was necessary to prevent the destruction of evidence, to ensure officer safety, or that other exigent circumstances exist"); *State v. Smith,* 124 Ohio St.3d 163, 920 N.E.2d 949, 956 (2009) ("We hold that the warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by

the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances.").

¶ 17 We conclude that a search of the call history of a cellular telephone on the person of the arrestee is a lawful search incident to arrest. Here, the uncontested evidence at the suppression hearing was that defendant's cell phone was removed from his person after his lawful custodial arrest. The officer then searched defendant's cell phone call history to confirm defendant had called the woman who arrived to sell Investigator J.W. the drugs. This search was a lawful warrantless search incident to arrest. *See, e.g., Smallwood,* 61 So.3d at 460.

¶ 18 Additionally, applying the narrower view proposed by some courts that officers may not search all data contained in a cell phone, nevertheless the search of the call history of defendant's cell phone was lawful. *See Hawkins v. State,* 307 Ga.App. 253, 704 S.E.2d 886, 891–92 (2010) ("Just because an officer has the authority to make a search of the data stored on a cell phone (that is, just because he had reason to 'open' the 'container') does not mean that he has the authority to sift through *all* of the data stored on the phone (that is, to open and view all of the sub-containers of data stored therein). Instead, his search must be limited as much as is reasonably practicable by the object of the search.").

¶ 19 We recognize that many modern cell phones, tablets, and other personal electronic devices, like computers, are capable of storing and accessing large amounts of personal information, and we are aware of the concerns of other courts regarding searches for information contained in these devices. *See Diaz,* 119 Cal.Rptr.3d 105, 244 P.3d at 513 (Werdegar, J., dissenting) ("A particular context-dependent balancing of constitutionally protected privacy interests against the police interests in safety and preservation of evidence led the United States Supreme Court, over 30 years ago, to hold searches of the arrestee's person reasonable despite the lack of probable cause or a warrant and despite substantial delay between the arrest and the search. Today, in the very different context

of mobile phones and related devices, that balance must be newly evaluated." (citation omitted)); *Smallwood,* 61 So.3d at 462 ("We are equally concerned that giving officers unbridled discretion to rummage through at will the entire contents of one's cell phone, even where there is no basis for believing evidence of the crime of arrest will be found on the phone, creates a serious and recurring threat to the privacy of countless individuals. Were we free to do so, we would find, given the advancement of technology with regards to cell phones and other similar portable electronic devices, officers may only search cell phones incident to arrest if it is reasonable to believe evidence relevant to the crime of arrest might be found on the phone."); *cf. Schlossberg,* 844 F.Supp.2d at ——; *Smith,* 920 N.E.2d at 955.

¶ 20 We agree with the practical consideration proposed by Magistrate Judge Torres of the Southern District of Florida, who stated:

> Perhaps the better alternative is to a find a technological answer to this technological problem. We don't have the answer, but a good place to start is by a user password protecting the electronic device. Short of that practical step, the solution does not lie with a revamped analysis of the search incident to arrest doctrine.

*Gomez,* 807 F.Supp.2d at 1150.

¶ 21 Thus, we conclude that the call history stored in a cell phone that is found in a defendant's clothes and on his person incident to arrest is not beyond the scope of a search incident to arrest. Accordingly, on the facts of this case, defendant's cell phone call log was accessible to searching officers.

¶ 22 Based upon our conclusion that the search of the call history of defendant's cell phone was a lawful search incident to arrest, we do not address the trial court's alternative conclusions that the call history was in plain view and that the search was justified by exigent circumstances.

### III. Juror Challenge

¶ 23 Defendant next contends the trial court abused its discretion in denying his

challenge for cause to a prospective juror. We disagree.

¶ 24 We review a trial court's ruling on a challenge for cause for abuse of discretion. *Carrillo v. People*, 974 P.2d 478, 485 (Colo.1999). We will not overturn the ruling unless it was manifestly arbitrary, unreasonable, or unfair. *People v. Gilbert*, 12 P.3d 331, 334 (Colo.App.2000).

¶ 25 A trial court must excuse a biased or prejudiced person from a jury. *People v. Young*, 16 P.3d 821, 824 (Colo. 2001); *see* § 16–10–103(1)(j), C.R.S.2011. "[I]n determining whether a potential juror should be disqualified for bias, a court must consider whether the juror will render a fair and impartial verdict according to the law and the evidence presented at trial." *Young*, 16 P.3d at 824. However, a prospective juror's expression of concern regarding some aspect of the case does not require automatic exclusion for cause because it "may simply reflect an honest effort to express feelings and convictions about matters of importance in an emotionally charged setting." *People v. Sandoval*, 733 P.2d 319, 321 (Colo.1987).

¶ 26 A trial court is entitled to give considerable weight to a potential juror's assurance that the juror can serve fairly and impartially, *People v. Blankenship*, 30 P.3d 698, 708 (Colo.App.2000), and the court is "in the best position to assess the state of mind of a prospective juror through personal observation and the evaluation of what may appear to be inconsistent responses to difficult questions." *People v. Veloz*, 946 P.2d 525, 531 (Colo.App.1997).

¶ 27 During voir dire, the following colloquy took place between defense counsel and Jurors R and J:

> [Defense Counsel]: [Juror R], let me ask you a question. We talked about the presumption of innocence. The defendant is presumed innocent. Is there a part of you that says, look, if [defendant] had not done anything at all, had not done anything wrong, he would not be sitting over there at a table that says, etched in steel, Defendant? Is there a part of you that thinks he must have done something wrong?
>
> [Juror R]: No.
>
> [Defense Counsel]: Anybody? [Juror J], is there a part of you that says you do end up sitting in that seat for doing nothing?
>
> [Juror J]: I don't.
>
> [Defense Counsel]: You don't what?
>
> [Juror J]: It is true.
>
> [Defense Counsel]: You had to do something for sitting there? Do you think—do you think it is possible for police maybe to get it wrong? Do you think sometimes police officers are mistaken?
>
> [Juror J]: No, not most of the time.
>
> [Defense Counsel]: Really? So if the judge instructs you that you need to presume [defendant] innocent because we have not heard any evidence in the case, in the back of your head you will be thinking, oh, he probably did something wrong, let me hear the story, we will see if maybe I can prove him innocent?
>
> [Juror J]: Yeah.
>
> [Defense Counsel]: Do you think because of these feelings it might be difficult for you to be fair and impartial to [defendant]?
>
> [Juror J]: No, I don't think—
>
> [Defense Counsel]: You will presume him innocent?
>
> [Juror J]: Until the story comes out. We will see.
>
> [Defense Counsel]: But you have not heard anything yet?
>
> [Juror J]: Right.
>
> [Defense Counsel]: So if you were asked to reach a verdict right now, let's say [the district attorney] gets up, says the prosecution rests, the case is closed, what is your verdict?
>
> [Juror J]: He is there for something.
>
> [Defense Counsel]: So the verdict would be guilty?
>
> [Juror J]: Probably, yeah.
>
> [Defense Counsel]: Okay. Thank you.
>
> [Trial Court]: [Juror J], I will interrupt for a moment. I want all jurors to understand the defendant is presumed innocent until the evidence is presented to prove him guilty beyond a reasonable doubt. He is entitled to a verdict of not guilty. Is

that an instruction you can follow, [Juror J]?

[Juror J]: Right.

[Trial Court]: At this point if I were to give you this case with no evidence, what would your verdict be?

[Juror J]: Innocent.

[Trial Court]: Okay. Thank you.

¶ 28 Defense counsel challenged Juror J and a second juror for cause, without stating a specific reason. The trial court denied the challenges, stating:

[N]either juror presents any indication of being anything but a fair and impartial juror. The Court notes the exchange that took place between defense counsel and the jurors was to some extent in a vacuum ... and did not inquire as to whether the jurors would follow the law and instructions given to them by the Court.

Based upon the Court's observations of the manner and demeanor of these jurors, based upon the responses to the Court's inquiry, the fact there ha[ve] not been follow-up questions, when afforded an opportunity, the challenges for cause are denied.

Defendant then used a peremptory challenge to remove Juror J from the jury.

■ ¶ 29 We conclude the trial court did not abuse its discretion in denying defendant's challenge for cause of Juror J. First, the trial court was in the best position to assess whether any of Juror J's responses warranted dismissal for cause. *See Veloz,* 946 P.2d at 531. Despite some confusion in his initial statements, when Juror J's responses are viewed as a whole, they do not reveal an unyielding bias that defendant was guilty. *See People v. Ferrero,* 874 P.2d 468, 471 (Colo.App.1993). Moreover, in his final response to the trial court's questioning, Juror J unequivocally, although perhaps inartfully,[5] applied the correct burden of proof. *See Blankenship,* 30 P.3d at 708 (concluding no abuse of discretion in denial of challenge for cause where prospective juror responded,

"I think so," when asked if she could listen to the evidence and apply it to the elements of a case in a fair and impartial manner, and affirmatively responded that she would base her decision on the testimony she heard at trial); *cf. People v. Hancock,* 220 P.3d 1015, 1019 (Colo.App.2009) (prospective juror who refused to apply correct burden of proof and was not subject to rehabilitative questioning or other counterbalancing information should have been excluded for cause).

■ ¶ 30 Nor are we persuaded by defendant's argument that the trial court's statement that "the defendant is presumed innocent until the evidence is presented to prove him guilty beyond a reasonable doubt" is an incorrect statement of the law, and thus failed to rehabilitate Juror J. During jury selection, the trial court instructed the jury at least three times that defendant was innocent until proven guilty and that the prosecution bore the burden of proving defendant's guilt beyond a reasonable doubt, and we discern no abuse of discretion in the trial court's statement above and rejection of defendant's challenge for cause of Juror J. *See Young,* 16 P.3d at 824 ("An appellate court must review the entire voir dire at issue when reviewing a trial court's ruling on a challenge for cause in order to place the juror's statement in context.").

### IV. Entrapment Instruction

■ ¶ 31 Defendant contends the trial court erred in denying his tendered entrapment instruction based upon its conclusion that because defendant denied committing the crime, he could not plead the affirmative defense of entrapment. We reject this contention.

■ ¶ 32 "A trial court's failure to provide a jury instruction after a defendant requests such instruction will be reviewed under the harmless error standard." *Brown v. People,* 239 P.3d 764, 767 (Colo.2010). A defendant is entitled to an entrapment instruction if he or she presents some evidence that

---

5. Defendant contends that because Juror J responded he would find defendant "innocent" rather than "not guilty," it shows Juror J did not understand or would not apply the correct burden of proof. This argument is unpersuasive, since Juror J was directly responding the trial court's statement that a defendant is "presumed innocent."

[t]he defendant engaged in the proscribed conduct because he was induced to do so by a law enforcement official or other person acting under his direction, seeking to obtain evidence for the purpose of prosecution, and the methods used to obtain that evidence were such as to create a substantial risk that the acts would be committed by a person who, but for such inducement, would not have conceived of or engaged in conduct of the sort induced. Merely affording a person an opportunity to commit an offense is not entrapment even though representations or inducements calculated to overcome the offender's fear of detection are used.

§ 18–1–709, C.R.S.2011.

¶ 33 Under Colorado law, entrapment is an affirmative defense. *People v. Sprouse*, 983 P.2d 771, 775 (Colo.1999); *People v. Hendrickson*, 45 P.3d 786, 790 (Colo. App.2001). "An affirmative defense instruction is one in which the defendant admits the doing of the act charged but seeks to justify, excuse, or mitigate it." *Hendrickson*, 45 P.3d at 790. Accordingly, divisions of this court have held that a defendant's denial of wrongdoing precludes an entrapment instruction. *See People v. Santana*, 240 P.3d 302, 310 (Colo.App.2009), *rev'd on other grounds*, 255 P.3d 1126 (Colo.2011); *People v. Grizzle*, 140 P.3d 224, 226 (Colo.App.2006); *Hendrickson*, 45 P.3d at 793.

¶ 34 Notwithstanding the foregoing, defendant argues that under the supreme court's recent holding in *Brown*, 239 P.3d at 769–70, failing to admit the underlying crime no longer precludes the assertion of an affirmative defense like entrapment. In *Brown*, the court held that a defendant who maintains his innocence throughout a trial "is not automatically barred from seeking jury instructions on a lesser included offense or on a related, voluntary intoxication defense. Rather, these jury instructions remain available provided that there is a rational basis for them in the evidence." *Id.* at 770. Our supreme court has not yet extended the reasoning of *Brown* to a case like this one, involving an affirmative defense.

¶ 35 Defendant's reading of *Brown* is too expansive. While the supreme court's holding in *Brown* only addressed lesser included offenses, the division of this court deciding *Brown*, 218 P.3d 733 (Colo.App. 2009), specifically addressed the United States Supreme Court's holding in *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), that a defendant claiming complete innocence may also raise an inconsistent defense of entrapment. The *Brown* division acknowledged prior precedent declining to follow *Mathews*, *see Grizzle*, 140 P.3d at 225–26; *Hendrickson*, 45 P.3d at 786, and recognized *Mathews* was not binding because it addressed federal criminal law not rooted in the United States Constitution. 218 P.3d at 738. The supreme court in *Brown* did nothing to disapprove this holding, indicating that the principle that one may not plead the affirmative defense of entrapment while maintaining innocence is still viable. Therefore, we reject defendant's contention that *Brown* holds that failing to admit the underlying crime no longer precludes the assertion of an affirmative defense like entrapment. Rather, we agree with those divisions holding the affirmative defense of entrapment is not available to a defendant who denies commission of the crime. *See Santana*, 240 P.3d at 310; *Grizzle*, 140 P.3d at 226; *Hendrickson*, 45 P.3d at 793.

¶ 36 Furthermore, assuming that the standard set forth in *Brown* were to apply here, we would nevertheless conclude that the trial court did not err in denying defendant's proposed entrapment instruction, because the evidence failed to support such an instruction.

¶ 37 "The entrapment statute creates a subjective test that focuses on the state of mind of a particular defendant, and does not set a general standard for police conduct." *Sprouse*, 983 P.2d at 776. "[T]he existence of any predisposition on the part of the defendant must be determined first, [and] then the extent of any such predisposition must be considered in relation to the character of the inducements." *Id.* The stronger the inducement, the more likely that "any resulting criminal conduct by the defendant occurred

as the result of the inducement rather than of the defendant's own predisposition." *Id.*

¶ 38 Here, defendant argues the evidence, viewed in the light most favorable to him, shows that the initial exchange with the officers established "some evidence" that the officers improperly induced him to aid in a drug sale.

¶ 39 We agree with the trial court, however, that the evidence presented at trial was insufficient to show "persistent inducements that would make anybody act in a criminal manner when they were not previously predisposed to do so." As the trial court noted, the evidence at trial was that defendant made hand and head signals which caused the police to contact him. Furthermore, accepting defendant's statement that the police contacted him first as true, the officers' two or possibly three questions on where to buy drugs are not such "persistent inducements" that they would make *anybody* act in a criminal manner. Indeed, this highlights defendant's predisposition to sell drugs, and, accordingly, we perceive no error in the trial court's refusal to give an entrapment instruction.

¶ 40 The judgment is affirmed.

Judge CARPARELLI concurs.

Judge BOORAS specially concurs.

Judge BOORAS specially concurring.

¶ 41 The majority acknowledges the concerns expressed by other courts regarding searches for information by way of modern cell phones, tablets, and other personal electronic devices based on the capability of such devices for storing and accessing large amounts of personal information. I write separately simply to point out that many other courts reject the view that the potential volume of information in a cell phone changes its character as a personal effect that may store considerable evidence of the crime for which a suspect has been arrested, and which may be searched incident to arrest under *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). *See Gracie v. State,* 92 So.3d 806, 811 (Ala.Crim. App.2011) (rejecting view that a cell phone is not a "container" that can be searched incident to arrest because it stores a wealth of digitized information wholly unlike any physical object found within a closed container); *People v. Diaz,* 51 Cal.4th 84, 119 Cal. Rptr.3d 105, 244 P.3d 501, 508 (2011) (questioning why the sheer quantity of personal information that might be contained in a cell phone should be determinative, and observing that "[e]ven 'small spatial container[s]' that hold less information than cell phones may contain highly personal, intimate and *private* information, such as photographs, letters, or diaries") (emphasis in original) (citation omitted); *Fawdry v. State,* 70 So.3d 626, 630 (Fla.Dist.Ct.App.2011) (noting that "[d]igital files and programs on cell phones have merely served as replacements for personal effects like address books, calendar books, photo albums, and file folders previously carried in tangible form"); *Hawkins v. State,* 290 Ga. 785, 723 S.E.2d 924, 926 (2012) (the mere fact that there is a potentially high volume of information stored in the cell phone should not control the question of whether that electronic container may be searched).

¶ 42 Likewise, courts have noted problems that would be caused by limiting a search on the basis of the quantity and types of information a device might hold. *See United States v. Murphy,* 552 F.3d 405, 411 (4th Cir.2009) (to require police officers to ascertain the storage capacity of a cell phone before conducting a search would be an unworkable and unreasonable rule); *United States v. Gomez,* 807 F.Supp.2d 1134, 1149–50 (S.D.Fla.2011) (crafting a "bright line" rule to guide the scope of a cell phone search is "very difficult," and "exacerbated by the continually advancing technology and computing capabilities of hardware, such as 'smart' phones"); *Diaz,* 119 Cal.Rptr.3d 105, 244 P.3d at 509 (a quantitative approach would create difficult line-drawing problems for both courts and police in determining whether a particular item's storage capacity is constitutionally significant).